OPINION
Appellants Joretta and Michael Wall appeal the June 22, 2001 decision and orders of the Shelby County Court of Common Pleas, Probate Division, pertaining to the estate of Violet Danzig, deceased.
Violet Danzig was the widow of Quentin Danzig, Bernard Danzig's brother. Bernard is the executor of Violet's estate, and one of the appellee's in this case. Kathleen McMillan is Bernard's daughter and is also an appellee. Appellant Joretta Wall is the daughter of Violet's deceased sister, and Appellant Michael Wall is Joretta's son.
While the parties dispute some of the facts, the evidence presented at trial revealed the following. Before her death, Violet Danzig lived in a condominium in Sidney, Ohio. Both Joretta and Michael live in Georgia and have for some time. At some point during the summer of 1998, Kathleen returned to Sidney, Ohio, after having lived in California. Kathleen began visiting Violet, running errands for her, bathing her, fixing her hair, cooking for her, doing her grocery shopping, and helping her open her mail to pay her bills.
Violet was a retired treasurer for the Sidney School System. As such, she was quite familiar with financial manners. Although she was in good mental health, her physical health became a major problem some time in late 1998 or early 1999. One of her main health problems was an ulcerated ankle that did not heal well, requiring her to have surgery on February 26, 1999. The day before her surgery, Violet signed a durable power of attorney appointing Kathleen as her attorney-in-fact, the validity of which is undisputed.
Violet remained hospitalized after her surgery until March 5, 1999, when she was moved to the skilled nursing unit at Dorothy Love Retirement Community (hereinafter "Dorothy Love"). Violet's condition was such that her stay at Dorothy Love was permanent, although she often expressed her desire to return home. Kathleen bought Violet a chair, a television, and some clothing for Violet with Violet's funds because she was a heavy smoker and her furniture and clothing were not suitable for Dorothy Love. While Violet was at Dorothy Love, Kathleen sold Violet's condominium and other personal belongings. Violet remained at Dorothy Love until her death on July 1, 1999.
Approximately three months prior to her death, Violet's attorney drafted a will for her, the validity of which is undisputed. In the will, she bequeathed her Dayton Power Light Co. (hereinafter "DPL") stock to Joretta, her stock in Firstar to Michael, and her HH bonds to Bernard. Violet also bequeathed various sums of money to three charities, and she left the rest and residue to Bernard, Joretta, Michael, and Kathleen, equally. In addition, Bernard was appointed her executor. Violet executed this will on March 25, 1999. However, on April 21, 1999, Violet wrote and signed the following statement, "Today I sold stock to even my estate per my will." This statement was notarized by Tina Rose at Dorothy Love.
From the time of her appointment as attorney-in-fact for Violet on February 25, 1999, until the time of Violet's death on July 1, 1999, Kathleen sold various stocks and bonds owned by Violet. She then placed the proceeds from these sales into a portfolio with American Express Financial Advisors (hereinafter "AMEX"). Included among these sales were stocks bequeathed to Joretta and Michael in Violet's will. Kathleen worked for American Express during a portion of this time and relied on her boss, Arthur Deisher, for advice in investing. During this time, Kathleen also closed several of Violet's bank accounts and placed the money from these accounts into the AMEX accounts.
At the time of Violet's death, the AMEX accounts were titled in her name and payable on death, the beneficiaries being Joretta, Michael, Bernard, and Kathleen. There was also an AMEX IMA account in Violet's name and payable upon her death to Bernard. This account contained 2,000 shares of Firstar stock.
In addition to the stock sales and bond redemptions, Kathleen sold Violet's condominium and the property therein, as previously mentioned. She also bought a computer with Violet's money and placed the computer in Bernard's home, and she sold Violet's car, worth $2,600, to herself for $1.00. Kathleen also bought approximately $60,000 worth of HH bonds in Violet's name with Violet's funds. Kathleen kept a journal of these various transactions during the time that she was Violet's attorney-in-fact. Upon Violet's death, Kathleen withdrew $25,000 from Violet's bank account in order to pay the rest of Violet's bills and to pay for funeral expenses. However, only $9,316.20 was used for these expenses. Kathleen kept the rest and deposited it into her own bank account. She returned this money to the estate on March 23, 2000.
As a result of the rearrangement of Violet's assets in the five months preceding her death, her estate sustained a large amount of tax liability. The funds of the estate were insufficient to pay this tax liability. In addition, the specific bequests and legacies left to Michael, Joretta, Bernard, and the three charities were either adeemed or sold to pay taxes. Therefore, Michael, Joretta, and Bernard only collected their portion of the pay-on-death AMEX accounts.[1]
On June 20, 2000, a complaint was filed in the Common Pleas Court of Shelby County by Joretta and Michael Wall, naming Kathleen McMillan, individually, and Bernard Danzig, individually and as executor of the estate of Violet Danzig, deceased, as defendants. However, this complaint was amended on November 29, 2000, the plaintiffs having been granted leave of court to do so.
The amended complaint alleged, inter alia, that Kathleen, as the attorney-in-fact for Violet, rearranged the distribution of Violet's assets through fraud, undue influence, mistake, a breach of fiduciary duty, or through wrongful disposition. The amended complaint also alleged that Kathleen converted various assets of Violet's for her own personal benefit and/or that of Bernard, her father. In addition, the amended complaint alleged that Violet did not have knowledge of Kathleen's actions nor did she consent to Kathleen's actions. Furthermore, the amended complaint alleged that Kathleen made these changes either to harm Violet's estate and the plaintiffs or with reckless or wanton disregard for such harm. In their demand for relief, Joretta and Michael requested damages, the imposition of a constructive trust, punitive damages, and that Kathleen provide an accounting of her service as attorney-in-fact, as well as various other demands.
The case proceeded to a bench trial on May 30, 2001. Thereafter, on June 22, 2001, the court issued its decision. The court determined that no evidence of fraud had been presented and that Kathleen had rebutted the presumption of undue influence in the creation of various pay-on-death accounts, some of which listed Kathleen as a surviving beneficiary. However, the court did find that Kathleen breached her fiduciary duty in withdrawing $25,000.00 from the estate upon Violet's death, over $15,000.00 of which she retained in her personal account until March 23, 2000. The court also found that Kathleen violated her fiduciary duty to Violet by purchasing the computer and placing it in Bernard's home, as well as selling Violet's car to herself for $1.00.
In accordance with its findings and in furtherance thereof, the court then made various orders regarding the distribution of Violet's property. Among these orders were that all four parties transfer the remaining AMEX accounts to the executor of Violet's estate. Bernard was also ordered to transfer his survivorship interest in the Firstar stock to himself as executor, then distribute the 2,000 shares and all accumulated dividends to Michael. The trial court then ordered Bernard to determine the value of the Firstar stock and any accumulated dividends at the time of distribution to Michael and distribute to Joretta in cash the value of this stock to represent her interest in the DPL stock, as well as distribute cash to himself in an amount equal to the value of this stock to represent his interest in the HH bonds. The purpose of the cash distributions was to even Violet's estate amongst these three beneficiaries in accordance with the wishes Violet expressed in her signed and notarized statement on April 21, 1999.
The trial court also ordered that the value of the computer, the difference in the value of the car and what Kathleen actually paid, the interest and penalties assessed against the income taxes due, and interest on the $15,707.80 retained by Kathleen after Violet's death be deducted from Kathleen's share of the residuary estate and then that amount be equally distributed to the other three residuary beneficiaries. This appeal followed, and Joretta and Michael Wall now assert four assignments of error with the trial court's June 22, 2001 decision.
 The Trial Court's Judgment Orders to the effect that Kathleen McMillan used her power of attorney for Violet Danzig to follow Violet's wishes and arrange her assets in such a form that they would be distributed according to her will and according to her wishes are against the manifest weight of the evidence adduced at trial, in that the trial court accepted and used evidence that was not competent nor credible as a matter of law in deciding the factual issues.
 The Trial Court erred in determining that Kathleen McMillan, as attorney in fact for the Decedent, overcame the strong presumption of undue influence over the self-serving transactions she undertook with Violet Danzig's assets, which presumption arose under the law applicable in this case.
 The trial court erred in determining that the alleged diary of March 13, 1999 of Kathleen McMillan set forth the "estate plan" of Violet Danzig, rather than the Last Will and Testament, which was executed March 25, 1999.
 The Trial Court erred in failing to award the Plaintiffs amounts equivalent to the specific bequests which were adeemed by unilateral action of the attorney in fact, prior to the decedent's death.
For the ease of discussion, this Court will address the second assignment of error first and then address the first, third, and fourth assignments of error together.
 Second Assignment of Error
The Ohio Supreme Court has determined that
 1. The survivorship rights under a joint and survivorship account of the co-party or co-parties to the sums remaining on deposit at the death of the depositor may not be defeated by extrinsic evidence that the decedent did not intend to create in such surviving party or parties a present interest in the account during the decedent's lifetime.
 2. The opening of a joint and survivorship account in the absence of fraud, duress, undue influence or lack of capacity on the part of the decedent is conclusive evidence of his or her intention to transfer to the surviving party or parties a survivorship interest in the balance remaining in the account at his or her death.
Wright v. Bloom (1994), 69 Ohio St.3d 596, paragraphs one and two of the syllabus. However, "[w]here a fiduciary relationship exists between a creator of a joint and survivorship account and a surviving beneficiary, there is suspicion that the transaction resulted from undue influence."Gotthardt v. Candle (1999), 131 Ohio App.3d 831, 835. The burden then shifts to the fiduciary/beneficiary to rebut this presumption through evidence other than self-serving testimony. Id. at 838. Once the presumption is rebutted, "the party attacking a completed transaction retains the ultimate burden of proving undue influence by clear and convincing evidence." Id. at 835.
Although the accounts involved in the case sub judice are payable on death rather than joint and survivorship, the parties agree that the rationale behind the Supreme Court's treatment of a joint and survivorship account can, likewise, be applied to the accounts currently at issue. Because Kathleen is one of the designated beneficiaries on the AMEX accounts and was in a fiduciary relationship with Violet, the creator of the account, as her attorney-in-fact, a presumption of undue influence arises, which Kathleen had to rebut. The trial court found that Kathleen rebutted this presumption.
The evidence before the trial court revealed that Kathleen signed the application for the AMEX accounts and the form designating Bernard as the beneficiary of the AMEX IMA account. However, Violet signed the form for the account in which Bernard, Kathleen, Joretta, and Michael were the beneficiaries, which reflects her intent to create such an account. In addition, the journal kept by Kathleen, admitted into evidence without the objection of counsel for Michael and Joretta, provided the trial court with evidence reflecting that the various funds placed into these accounts were done so at Violet's choosing, as does her signed statement about selling stocks to even her estate per her will. Therefore, when considering the totality of the evidence, the trial court was within its discretion to find that Kathleen rebutted the presumption of undue influence.
Moreover, none of the parties maintain that Violet was incompetent at any point, and, in fact, Violet's knowledge of financial manners was unquestioned by any party. Finally, with the exception of testimony about Violet's heavy smoking and Kathleen being the only one to provide her with cigarettes and to take her outside to smoke during her stay at Dorothy Love, no evidence of fraud, duress, or undue influence was presented to show that Kathleen breached her fiduciary duty in transferring various funds to the AMEX accounts. Therefore, the second assignment of error is overruled.
 First, Third, and Fourth Assignments of Error
When reviewing a factual inquiry, an appellate court must examine the trial court's decision "under the standard of manifest weight of the evidence." Barkley v. Barkley (1997), 119 Ohio App.3d 155, 159
(citations omitted). Thus, "[a] trial court's decision should be reversed if it is clearly against the manifest weight of the evidence."Security Pacific National Bank v. Roulette (1986), 24 Ohio St.3d 17, 20. However, "[j]udgments supported by some competent, credible evidence going to all the essential elements of the case will not be reversed by a reviewing court as being against the manifest weight of the evidence."C.E. Morris Co. v. Foley Construction Co. (1978), 54 Ohio St.2d 279, syllabus; see also Whitman v. Whitman-Norton (November 20, 2000), Hancock App. No. 5-2000-10, unreported, 2000 WL 1785021.
This highly deferential standard of review requires the affirmation of the judgment of a trial court if there is "even `some' evidence" to support the finding of that court. Barkley, 119 Ohio App.3d at 159. In addition, "a court of appeals [is] guided by a presumption that the findings of the trier-of-fact were indeed correct." Seasons Coal Co.,Inc. v. City of Cleveland (1984), 10 Ohio St.3d 77, 80. The rationale underlying such a presumption is that "the trial judge is best able to view the witnesses and observe their demeanor, gestures and voice inflections, and use these observations in weighing the credibility of the proffered testimony." Id.
Appellants maintain in their first assignment of error that the trial court's finding that Kathleen used her power of attorney status to follow Violet's wishes is against the manifest weight of the evidence because the trial court relied on incompetent and uncredible evidence. The evidence challenged by Appellants includes the journal, which Joretta and Michael contend depends wholly upon Kathleen's self-serving testimony, Violet's written statement of April 21, 1999, and the beneficiary designation form for the AMEX accounts.
Notably, counsel for Joretta and Michael did not object to the admission of Kathleen's journal. The failure to object to the admission of evidence generally waives the right to assign error on appeal. SeeStores Realty Co. v. Cleveland (1975), 41 Ohio St.2d 41; LeFort v.Century 21-Maitland Realty Co. (1987), 32 Ohio St.3d 121. Thus, they cannot complain now about the admittance of such evidence nor the trial court's reliance thereon.
On the other hand, highly probative evidence of Violet's wishes with regard to the distribution of her assets can be found in the will and the notarized statement made nearly one month after the making of her will, in conjunction with Kathleen's testimony as to her actions and the reasoning behind such action, as reflected in the journal. For example, Kathleen testified that Violet wanted to provide roughly $60,000 to Bernard, the same to Michael, and the same to Joretta. In order to accomplish this, she ordered that this amount of HH bonds be bought and the E and EE bonds be sold. Her will then specifically bequeaths the HH bonds to Bernard, DPL stock to Joretta, and Firstar stock to Michael. The will then provides that Bernard, Kathleen, Joretta, and Michael be the residuary beneficiaries, sharing equally, similar to their designations by her in her pay-on-death accounts. The journal, likewise, reflects these facts. In addition, it can reasonably be determined that Violet was aware of who the beneficiaries were for her pay-on-death accounts because her signature, the authenticity of which went unchallenged, is on the beneficiary designation form.
Violet's written statement that she sold stock to even her estate as per her will, made less than one month after her will, corroborated Kathleen's testimony. Tina Rose, the notary who notarized the statement, testified that Kathleen did not say anything during the signing. Moreover, Tina testified that she made sure that Violet knew what the statement read, that Violet was signing voluntarily and of her own free will, and that Tina was confident that Violet knew what she was doing. This statement, combined with Violet's signature on the beneficiary designation form, Kathleen's testimony, and the journal entries reflecting the sales and distributions, are not inconsistent with the terms of Violet's will. As a result of the foregoing evidence, the trial court did not set aside Violet's will but found that the journal reflected Violet's estate plan in accordance with the will.
Thus, in considering the evidence, it is the conclusion of this Court that the judgment of the trial court that Kathleen used her power of attorney to follow Violet's wishes and that the journal reflects Violet's estate plan, is supported by some competent, credible evidence other than merely Kathleen's self-serving statements. In addition, the trial court's orders effectuate Violet's intentions, as reflected in her notarized statement, by giving the remaining Firstar stock to Michael and giving both Joretta and Bernard cash amounts equal to the value of the Firstar stock and any accumulated dividends thereon, thus evening her estate.
As to the request of Joretta and Michael for the court to create a constructive trust or to provide them damages for the adeemed bequests, the law in effect at the time of Violet's death does not allow such a remedy under the circumstances and findings of the trial court as previously discussed and validated herein. Ordinarily, ademption occurs "when the object of the [specific] legacy ceases to exist." In re Estateof Hegel (1996), 76 Ohio St.3d 476, 477 (citations omitted). In fact, when the object of such a bequest or devise is "`extinguished in the lifetime of the testator, such bequest is adeemed, and the designated beneficiary thereof is wholly deprived of it or any property in lieu of it, in the absence of a contrary expression in the will.'" Id. (citingBool v. Bool (1956), 165 Ohio St. 262, 267). Thus, in accordance with this authority, Joretta and Michael were not entitled to their specific bequests, a constructive trust, or any damages resulting from the ademption.
The legislature has recently provided exceptions to the ademption doctrine. Currently, under Ohio law, "[i]f specifically devised or bequeathed property is sold by a guardian [or] by an agent acting within the authority of a power of attorney * * * the specific devisee or legatee has the right to a general pecuniary devise or bequest equal to the net proceeds of sale[.]" R.C. § 2107.501(B). However, this was not the law on July 1, 1999. At that time, the law only allowed an exception to the doctrine of ademption for property sold by a guardian. See former R.C. § 2107.501(B) (in effect from December 17, 1986, until August 29, 2000). In fact, applying the former statute to an attorney-in-fact was specifically rejected by the Ohio Supreme Court in 1996. In re Estate of Hegel, supra. Kathleen was Violet's attorney-in-fact, not her guardian. Therefore, the trial court did not err in rejecting Joretta and Michael's request for relief. Accordingly, the first, third, and fourth assignments of error are overruled.
For all of these reasons, Appellant's assignments of error are overruled. It is the order of this Court that the judgment of the Common Pleas Court of Shelby County is affirmed.
Judgment affirmed.
HADLEY and WALTERS, JJ., concur.
[1] Violet also had life insurance naming these parties as beneficiaries.