[This opinion has been published in *Ohio Official Reports* at 76 Ohio St.3d 476.]

IN RE ESTATE OF HEGEL.

[Cite as *In re Estate of Hegel*, 1996-Ohio-77.]

*Probate law—Wills—An ademption has occurred where specifically devised property was sold to a third party prior to the testator's death under a durable power of attorney.*

(No. 95-1627—Submitted June 4, 1996—Decided  August 28, 1996.)

APPEAL from the Court of Appeals for Warren County, No. CA94-12-103.

_____

{¶ 1} On July 24, 1990, Helen Hegel executed her last will and testament and devised her residence and its contents to appellee, Patricia Martin Boettger, her first cousin once removed.  In April 1993, Hegel was injured after sustaining a fall.  She underwent surgery, but remained unresponsive and could not communicate until she died on January 16, 1994.

{¶ 2} Approximately two months prior to Hegel's death, Boettger, as Hegel's named attorney-in-fact, used the power of attorney which Hegel had executed previously on her behalf, and sold the residence and its contents to a bona-fide purchaser.  Although Boettger knew that Hegel had executed a will, she was unaware of the will's contents.

{¶ 3} When Hegel's will was admitted to probate, Boettger discovered that she had been devised the real estate and its contents.  Boettger submitted to Hegel's estate an affidavit of claim for $48,438.86, representing the cash proceeds remaining in Hegel's estate from the sale of the house.  Appellant, Steven A. Nemeth, Executor of the Estate of Helen F. Hegel, rejected Boettger's claim on February 23, 1994.

{¶ 4} On July 25, 1994, Boettger, in a second attempt to receive the proceeds from the sale of the house, filed an application for distribution as a

beneficiary along with a memorandum in support of the application. The fiduciary filed a memorandum in opposition. On November 14, 1994, the probate court rejected Boettger's application on the ground that the specific devise made to her by Hegel had been adeemed. The court of appeals, in a two-to-one vote, reversed the decision of the probate court and remanded for an order of distribution.

{¶ 5} The cause is now before this court upon allowance of a discretionary appeal.

––––––––––––––––––

*Huprich & Conn* and *Jennifer K. Gothard; Cors & Bassett* and *L. Barry Cors,* for appellee.

*Keating, Ritchie, Norwine & Swick* and *Kevin L. Swick; and Lloyd D. Dooley*, for appellant.

––––––––––––––––––

**FRANCIS E. SWEENEY, SR., J.**

{¶ 6} In this case, we must determine whether an ademption has occurred where specifically devised property was sold to a third party prior to the testator's death under a durable power of attorney. Since we find that the devise has been adeemed, we reverse the decision of the court of appeals.

{¶ 7} The principle of ademption refers to "a taking away" of a specific bequest or devise and occurs when the object of the legacy ceases to exist. *Bool v. Bool* (1956), 165 Ohio St. 262, 267, 59 O.O. 356, 358, 135 N.E.2d 372, 376; *In re Estate of Mellott* (1954), 162 Ohio St. 113, 115, 54 O.O. 53, 54, 121 N.E.2d 7, 8. In *Bool*, we held, at paragraph one of the syllabus, that "[w]here the subject of a specific bequest has been extinguished in the lifetime of a testator, such bequest is adeemed, and the designated beneficiary thereof is wholly deprived of it or any property in lieu of it, in the absence of a contrary expression in the will."

{¶ 8} Since the *Bool* decision, the General Assembly has enacted R.C. 2107.501(B), which sets forth a narrow exception to the ademption doctrine for the

2

sale of specifically devised or bequeathed property made by a guardian. According to this statute, "[i]f specifically devised or bequeathed property is sold by a *guardian*, *** the specific devisee or legatee has the right to a general pecuniary devise or bequest equal to the net proceeds of sale ***." (Emphasis added.) Thus, the specific devisee or legatee's rights are protected and are not extinguished where the guardian sells specifically devised or bequeathed property.

{¶ 9} R.C. 2107.501 was modeled after former Uniform Probate Code Section 2-608. However, this Uniform Probate Code section, amended in 1987 and in 1990, and renumbered as Section 2-606, was expanded to protect specifically devised or bequeathed property sold by attorneys-in-fact acting under a durable power of attorney. Thus, under current Uniform Probate Code Section 2-606(b), if specifically devised property is sold "by an agent acting within the authority of a *durable power of attorney* for an incapacitated principal, *** the specific devisee has the right to a general pecuniary devise equal to the net sale price ***." (Emphasis added.) 8 U.L.A. (1996 Supp.) 171.

{¶ 10} To date, the General Assembly has not adopted Uniform Probate Code Section 2-606. Instead, R.C. 2107.501 is limited in its scope to specific devises or bequests sold by a **guardian** and does not apply to sales by attorneys-in-fact. Had the General Assembly intended for the statutory exception in R.C. 2107.501 to apply to agents acting under the authority of a durable power of attorney, in addition to guardians, it could have amended the statute to include reference to powers of attorney, similar to the language contained in amended Uniform Probate Code Section 2-606. However, it chose not to do so.

{¶ 11} Despite the *Bool* decision and the clear language of R.C. 2107.501(B), the majority of the court of appeals focused on the testator's intent and held that the specific bequest had not been adeemed. Although the majority recognized that Ohio has not yet adopted Uniform Probate Code Section 2-606, it decided to treat those acting under powers of attorney the same as guardians. We

disagree with this interpretation and are unwilling to read into the statute language that the General Assembly has decided not to specifically include. Furthermore, we do not view those acting under powers of attorney the same as guardians. Guardians are appointed by the probate court and are subject to the court's control, whereas attorneys-in-fact have much more freedom and can act without court approval as the principal's "alter ego." See R.C. 2111.01(A), 2111.49, 2111.50 (acts by guardians); cf. R.C. 1337.09(C) (durable power of attorney).

{¶ 12} The statutory language of R.C. 2107.501(B) is clearly limited to the sale of property by guardians and does not protect specifically devised property sold by attorneys-in-fact. Thus, as applied to this case, when Boettger, as attorney-in-fact, sold the testator's residence and its contents prior to the testator's death, Boettger adeemed her specific devise and lost her right to the devised property.

{¶ 13} Accordingly, we reverse the judgment of the court of appeals and reinstate the decision of the probate court.

*Judgment reversed.*

MOYER, C.J., DOUGLAS and COOK, JJ., concur.

RESNICK and STRATTON, JJ., separately dissent.

PFEIFER, J., dissents.

_____

**ALICE ROBIE RESNICK, J., dissenting.**

{¶ 14} The incapacity of Helen Hegel is a crucial and distinguishing factor that makes this case different from a typical ademption case. Since the majority fails to recognize or find that incapacity does indeed make a difference, I must dissent. The factual circumstances of this case illustrate in a compelling way that the majority decision is not only unfair but contrary to law. I would affirm the judgment of the court of appeals that no ademption occurred.

{¶ 15} Of critical importance to this case are the undisputed facts that Patricia Boettger had no knowledge of the contents of Hegel's will until after

Hegel's death, and that Hegel was suffering from an incapacity at the time of the sale of the property, with that incapacity continuing until the time of Hegel's death. Boettger was acting in good faith and in the best interests of Hegel (and ultimately of Hegel's estate) when she sold the residence and its contents. The majority's determination that the specific devise of the house and bequest of the contents to Boettger have been adeemed punishes Boettger for inadvertently acting inconsistently with the contents of the will when Boettger knew nothing about those contents.

{¶ 16} In *Bool v. Bool* (1956), 165 Ohio St. 262, 59 O.O. 356, 135 N.E.2d 372, at paragraph one of the syllabus, this court set down the bright-line rule that a specific bequest is adeemed when the subject of the bequest is extinguished before the testator's death. However, since *Bool* did not involve the complicating factor of a testator's incapacity, it is questionable whether a situation involving incapacity of the testator at the time of the extinguishment of the specific bequest or devise falls within the bright-line rule established by *Bool*.

{¶ 17} In *Bishop v. Fullmer* (1960), 112 Ohio App. 140, 16 O.O.2d 60, 175 N.E.2d 209, the Court of Appeals for Defiance County considered this very question—whether the rule of *Bool* requires ademption when the testator was mentally incompetent at the time of the sale of the property specifically devised. The *Bishop* court stated that "[t]he factual situation in the case at bar was not before the Supreme Court in the *Bool* case," and that the *Bool* decision did not control the decision in the case before it, "which requires the application of a different principle of law." The appellate court in *Bishop* concluded that the mental competency of the testator was the "vital and controlling issue" to determine whether the specific devise had been adeemed. 112 Ohio App. at 144, 16 O.O.2d at 62, 175 N.E.2d at 2121.

{¶ 18} Although in *Bishop* it was a guardian who had sold the property in question covered by the specific devise, no statute existed at the time to justify the

court's decision to distinguish the factual scenario before it from that of *Bool*.  R.C. 2107.501(B),[1] establishing a statutory exception to the ademption doctrine when a guardian sells the specifically devised or bequeathed property, was not enacted until 1975, and took effect on January 1, 1976.  Am.Sub.S.B. No. 145, 136 Ohio Laws, Part I, 347-348.    Thus, the *Bishop* court, predating R.C. 2107.501(B) by approximately fifteen years, established a common-law exception to *Bool's* bright-line ademption rule when the testator is incapacitated or incompetent at the time the specific devise or bequest is extinguished.

**{¶ 19}** I see no reason why the common-law exception recognized in *Bishop* for sale of property by a guardian should not also apply to a sale by the holder of a durable power of attorney.  The critical factor in *Bishop* was the testator's incapacity at the time of the sale, not that the one who conducted the sale was a guardian.  Like the *Bishop* court, I conclude that the fact of the testator's incapacity at the time of the sale of the property in this case distinguishes the situation before us from that in *Bool*.  That the General Assembly has not adopted Uniform Probate Code Section 2-606 to specifically address a sale by an attorney-in-fact should not deter us from recognizing that a common-law exception to *Bool's* bright-line ademption doctrine exists.  Such a common-law exception should control our decision in this case.  The court of appeals was correct in its determination that no ademption occurred here, given the undisputed facts of this case.

---

**STRATTON, J., dissenting.**

**{¶ 20}** I join in Justice Resnick's dissent.  I strongly agree that the incapacity of the testator is the key distinguishing issue here, not "guardian" vs. "attorney-in-fact."  Attorneys-in-fact are a more recent occurrence and their use is

---

1. Current R.C. 2107.501(B) was enacted in 1975 as R.C. 2107.501(A).  Am.Sub.S.B. No. 145, 136 Ohio Laws, Part I, 347-348.    The section was redesignated as R.C. 2107.501(B) in 1986. Am.Sub.S.B. No. 248, 141 Ohio Laws, Part I, 520-521.

now often encouraged by estate planners and counselors as a way to avoid "court interference" or supervision. Most testators have little appreciation of the difference in the roles of guardian and attorney-in-fact other than one seems less complicated to use than the other.

{¶ 21} Today's decision gives a dangerous power to all attorneys-in-fact to change a will once their charge becomes incompetent. There is now no protection against the greedy or unscrupulous attorneys-in-fact. At least in Hegel's case, Boettger did what she believed was best for her charge, innocently depriving herself of her inheritance and providing an unintended windfall to the other heirs. But now, nothing prevents an attorney-in-fact from altering a will to his or her benefit. For example, a house, the main asset in the estate, may be left to Heir A. Heir B inherits the remaining cash. Heir B is appointed attorney-in-fact. The testator becomes incompetent. Heir B sells the house, claiming the cash is insufficient to pay debts. The bequest is adeemed; Heir B now inherits everything. Heir A is out in the cold. At least in a guardianship, a court can supervise an estate and prevent such injustice. Under this court's holding, there would be no recourse.

{¶ 22} Ademption is a doctrine that means if a testator makes changes to his or her estate and does not alter his or her will to accommodate those changes, the results are deemed intended since the testator <u>could</u> have made the necessary adjustments. In a situation of incompetence, the testator no longer is accountable for changes in the estate as he or she lacks the capacity for intent and lacks the ability to execute a new will. To allow ademption because of *another's* action or intent, even though designated as an attorney-in-fact, can create a great potential for abuse. Legal counsel and estate planners should be cautioned to advise all their clients, past and present, who have executed an attorney-in-fact designation (assuming the client is *still* competent), that an attorney-in-fact now holds dangerous power to alter the effect of their wills if they become incompetent.

————————————