In the MATTER OF the GUARDIANSHIP AND PROTECTIVE PLACEMENT OF MURIEL K., alleged incompetent:

Jeffrey KNIGHT and Norris Knight, Appellants-Petitioners,

v.

MILWAUKEE COUNTY and Muriel K., Respondents.

Supreme Court

*No. 00–0929. Oral argument December 3, 2001.—Decided March 19, 2002.*

2002 WI 27

(Also reported in 640 N.W.2d 773.)

11

For the appellants-petitioners there were briefs by *Patricia M. Cavey*, Milwaukee, and oral argument by *Patricia M. Cavey*.

For the respondent, Milwaukee County, there was a brief (in the court of appeals) by *Mary Ellen Poulos*, principal assistant corporation counsel.

For the respondent, Muriel K., there were briefs by *Robert B. Peregrine* and *Peregrine & Roth, S.C.*, Milwaukee, and *Pamela D. Crawford*, Franklin, and oral argument by *Robert B. Peregrine*.

For Steven C. Underwood, guardian of the person, there was a brief by *Brian W. McGrath, John F. Callan*, and *Foley & Lardner*, Milwaukee, and oral argument by *Brian W. McGrath*.

An amicus curiae brief was filed by *William P. Donaldson*, Madison, on behalf of the Wisconsin Board on Aging and Long Term Care.

¶ 1. ANN WALSH BRADLEY, J. The petitioners, Jeffrey and Norris Knight, seek review of a published court of appeals decision dismissing their appeal from a circuit court order that revoked Muriel K.'s power of attorney documents naming the Knights as agents, protectively placed Muriel K., and appointed guardians of her person and estate.[1] The Knights assert that the court of appeals erred in concluding that they lacked standing to appeal. We determine that the Knights have standing to appeal under Wis. Stat. § 879.27(1)

---

[1] *See Knight v. Milwaukee County*, 2001 WI App 147, 246 Wis. 2d 691, 633 N.W.2d 222 (dismissing an appeal from orders of the Circuit Court for Milwaukee County, Victor Manian, Judge).

(1999–2000)[2] as agents under health care and durable power of attorney documents. Accordingly, we reverse the court of appeals decision and remand to the court of appeals.

I

¶ 2. In June 1999, with the assistance of Attorney Robert Moodie, Muriel K. executed a durable power of attorney pursuant to Wis. Stat. § 243.07. She named Jeffrey Knight as her agent under the durable power of attorney document, and granted him the following powers:

> To do and perform all and every act, deed, matter, and thing whatsoever in and about my estate, property and affairs as fully and effectually to all intents and purposes as I might or could do in my own proper person, if personally present, the specifically enumerated powers described in this power of attorney being in aid and exemplification of the full, complete, and general power granted and not in limitation or definition.

¶ 3. In accordance with § 243.07, Muriel K.'s durable power of attorney document contained a provision that the powers granted "shall not be affected by my subsequent disability or incapacity." Although § 243.07(3)(b) provides that a principal may nominate a guardian for the circuit court's consideration if protective proceedings are commenced, Muriel K.'s durable power of attorney document contained no nomination of a guardian. Subsequently, she also executed a health care power of attorney pursuant to Wis. Stat. ch. 155 and named Jeffrey and his father, Norris Knight, as her agents under that power of attorney.

---

[2] All subsequent references to the Wisconsin Statutes are to the 1999–2000 version unless otherwise indicated.

17

¶ 4. Shortly after executing the durable power of attorney for Muriel K., Attorney Moodie received a letter from Steve Underwood, a relative of Muriel K.'s who was named in her will. Underwood's letter expressed concern that Jeffrey was exercising undue influence over Muriel K. and explained that she previously had executed a power of attorney with another lawyer, John Raasch.

¶ 5. In early September 1999, with the assistance of Attorney Moodie, Muriel K. memorialized her estate plan and advance directives on videotape. She explained that she was making the video to prevent Underwood from contesting her will. In addition, she indicated that she was concerned that he would attempt to make it seem that she was subject to undue influence or that she was "not right in my head."

¶ 6. Near the end of October 1999 Chris Krizek, a Milwaukee County elder abuse investigator, received a referral that led her to visit Muriel K. at home. After finding Muriel K. in what Krizek described as a "stuporous, possibly comatose" state, Krizek petitioned the circuit court to appoint guardians for Muriel K. and order protective placement. In the petition, Krizek alleged that the Knights were engaging in physical and financial abuse of Muriel K.

¶ 7. The probate court commissioner appointed a guardian ad litem for Muriel K. and issued an order for temporary guardianship that "suspended" Muriel K.'s powers of attorney. In the order, the court appointed Underwood as temporary guardian of her person. The court appointed Attorney Raasch temporary guardian of Muriel K.'s estate.

¶ 8. After the appointment of the temporary guardians, Attorney Moodie and the Knights filed appearances in the ongoing guardianship and protective

18

placement proceedings. The Knights objected to, among other things, the suspension of Muriel K.'s powers of attorney. The circuit court extended the temporary guardianship and appointed adversary counsel for Muriel K.

¶ 9. At the hearing for the permanent guardianship, the Knights appeared by counsel. Muriel K. was not present, and the Knights objected. They asserted that the circuit court lacked jurisdiction to proceed under *Leinwander v. Simmons,* 236 Wis. 305, 294 N.W. 821 (1940), which requires that a proposed ward be present at the hearing, if possible. *See Bryn v. Thompson,* 21 Wis. 2d 24, 30, 123 N.W.2d 505 (1963). The guardian ad litem argued, however, that it was not in Muriel K.'s best interest to attend because she became upset at the idea of coming to the hearing. Adversary counsel asserted that the Knights had no right to participate in the proceedings. The court agreed with the guardian ad litem and adversary counsel, and the hearing proceeded without Muriel K.'s presence and with limited participation by the Knights.

¶ 10. After the hearing, the court adjudicated Muriel K. incompetent and issued an order for protective placement. In the order, the court appointed Underwood as permanent guardian of Muriel K.'s person and Attorney Raasch as permanent guardian of her estate. The order also declared all previous powers of attorney revoked and invalid.[3] The Knights appealed.

---

[3] The exact procedure by which Muriel K.'s powers of attorney were revoked is not critical to our decision, but we explain the process in more detail for the sake of clarity and completeness. By operation of Wis. Stat. § 155.60(2), the order adjudicating Muriel K. incompetent and appointing guardians automatically revoked her power of attorney for health care because the circuit court did not make a finding that it should

¶ 11. The guardian ad litem and adversary counsel moved the court of appeals to dismiss the Knights' appeal, arguing that the Knights lacked standing to appeal. Although the court of appeals initially denied the motion, it ultimately agreed with the guardian ad litem and adversary counsel in its written decision.

¶ 12. In its decision, the court of appeals determined that the question of the Knights' standing turned on the interpretation of § 879.27(1) and (4). The court of appeals concluded that under § 879.27(1), only a "person aggrieved" may appeal and that the Knights were not persons aggrieved by the order revoking Muriel K.'s powers of attorney.

¶ 13. The court of appeals noted, however, that minors and incompetent individuals are under a disability such that when they are persons aggrieved, a question remains as to who may assert their rights. The court concluded that § 879.27(4) definitively and exclusively answers that question. The court explained as follows:

> There are circumstances where minors would be "aggrieved" by an order of the probate court that affects them. Incompetents might also be "aggrieved" by a probate-court order. But both minors and incompetents are under a disability and their rights have to be asserted by others. It is here where Wis. Stat. § 879.27(4) kicks in; the section grants the right to pursue an appeal on behalf of a minor or an incompe-

---

remain in effect. Similarly, under Wis. Stat. § 243.07(3)(a), a guardian of the estate is authorized to revoke a durable power of attorney unless the court finds that it should remain in effect. After Attorney Raasch was appointed temporary guardian, he sent a letter to Jeffrey Knight indicating that he was revoking Muriel K.'s durable power of attorney naming Jeffrey as her agent.

tent to two classes of persons: the guardian of the estate of the minor or incompetent, and the guardian ad litem. This right to appeal on their behalf is *exclusive*.

*Knight v. Milwaukee County,* 2001 WI App 147, ¶ 20, 246 Wis. 2d 691, 633 N.W.2d 222 (emphasis in original). Because the Knights were neither Muriel K.'s guardian ad litem nor the guardians of her estate, the court dismissed their appeal.

## II

¶ 14. The question before us is whether the Knights, as Muriel K.'s named agents under her health care and durable powers of attorney, have standing to appeal. The parties agree that § 879.27 grants a right to appeal from guardianship proceedings under Wis. Stat. ch. 880, but they disagree as to its application to the Knights. The interpretation and application of a statute is a question of law that we review independently of the determination rendered by the court of appeals. *Roth v. City of Glendale,* 2000 WI 100, ¶ 15, 237 Wis. 2d 173, 614 N.W.2d 467.

¶ 15. We begin our analysis by examining § 879.27. It provides in relevant part:

(1) APPEAL IS TO THE COURT OF APPEALS. Any person aggrieved by any appealable order or judgment of the court assigned to exercise probate jurisdiction may appeal or take writ of error therefrom to the court of appeals.

. . . .

(4) WHO MAY APPEAL ON BEHALF OF MINOR OR INCOMPETENT. In all cases the appeal on behalf

21

of any minor or incompetent person may be taken and prosecuted by the guardian of the minor's or incompetent's estate or by a guardian ad litem.

¶ 16. We note that there is no real dispute over the question of whether Muriel K. is a person aggrieved under § 879.27(1). In order to be aggrieved by a judgment or order, that judgment or order must operate on a person's rights of property or bear directly on some other interest. *See Jindra v. Diederich Flooring,* 181 Wis. 2d 579, 611, 511 N.W.2d 855 (1994). "An 'aggrieved party' within the meaning of a statute governing appeals is one having an interest recognized by law in the subject matter which is injuriously affected by the judgment." *Id.*

¶ 17. Muriel K. has a legally recognized interest in the subject matter of her own guardianship and protective placement. In addition, she may be adversely affected by the order in this case for any number of reasons, not the least of which is the revocation of her powers of attorney. Thus, because Muriel K. is a person aggrieved, the question, framed broadly, becomes: who may speak for Muriel K. under § 879.27?

¶ 18. The guardian ad litem, adversary counsel, and Underwood ("respondents"[4]) argue, in agreement with the court of appeals, that the Knights may not appeal under § 879.27(1) because they are not personally aggrieved by the order. In addition, and also in agreement with the court of appeals, the respondents assert that the Knights may not appeal under § 879.27(4) because that subsection authorizes only the

[4] Underwood filed a brief separate from the joint brief of the guardian ad litem and adversary counsel, but in his brief he states that he adopts their position.

guardian ad litem and the guardian of the estate to appeal on Muriel K.'s behalf.

¶ 19. The Knights acknowledge that § 879.27(4) may limit standing to appeal "on behalf of" Muriel K. to only the guardian ad litem and guardian of her estate. However, the Knights assert, they need not proceed under § 879.27(4). The Knights argue that they have standing to appeal because they were Muriel K.'s agents under her revoked powers of attorney. The essence of their assertion is that they stand in Muriel K.'s shoes for purposes of § 879.27(1).[5]

██

¶ 20. We disagree with the court of appeals' interpretation that § 879.27(1) and (4) clearly and exclusively provide that an appeal can be brought by only "two classes of persons: the guardian of the estate of the minor or incompetent, and the guardian ad litem." *Knight,* 2001 WI App 147, ¶ 20. By interpreting § 879.27(4) as a limitation on § 879.27(1) rather than as complementary to it, the court of appeals narrows the

---

[5] The Knights, secondarily, also assert that they have standing to appeal as petitioners who unsuccessfully moved to restore Muriel K.'s rights pursuant to Wis. Stat. § 880.33(3), and they cite to *Carla S. v. Frank B.,* 2001 WI App 97, 242 Wis. 2d 605, 626 N.W.2d 330. In *Carla S.,* the court of appeals determined that a daughter of a ward, Carla S., had standing to appeal from an order authorizing the ward's guardian to gift the ward's interest in his home. Without discussing or even referencing Wis. Stat. § 879.27, the court concluded that Carla S. had standing to appeal as an "interested person" under Wis. Stat. § 880.01(6). *See Carla S.,* 2001 WI App 97, ¶ 9. Our focus is on § 879.27(1), and because we hold that the Knights have standing under § 879.27(1) as Muriel K.'s power of attorney agents, we do not address their other assertions.

scope of the statute, writing out the ability to bring an appeal under § 879.27(1). The language of the statute dictates otherwise.

¶ 21. Section 879.27(1) provides: "Any person aggrieved by any appealable order or judgment of the court assigned to exercise probate jurisdiction may appeal . . . ." Yet, the court of appeals concludes that once a determination is made that an incompetent person is aggrieved under § 879.27(1), then § 879.27(4) "kicks in" to answer definitively and exclusively who may bring the appeal. The language of § 879.27(1), however, provides that aggrieved persons may bring appeals in their own right. Thus, as previously noted, the question becomes: who may speak for Muriel K.?

¶ 22. Contrary to the court of appeals' rationale, the respondents acknowledge that authority to speak for an incompetent individual exists under § 879.27(1). At oral argument, the respondents maintained that adversary counsel, who is not listed under § 879.27(4) as one of the two classes of persons who can appeal "on behalf of" the incompetent individual, has authority to speak for that individual on appeal. To conclude, as did the court of appeals, that an appeal can be pursued only under § 879.27(4) would be to eliminate the incompetent person's right to adversary counsel on appeal.

¶ 23. Unlike the language of § 879.27(4), which clearly defines two categories of persons who may appeal "on behalf of" an incompetent individual, the language of § 879.27(1) provides no answer to the question of who may speak for an incompetent individual pursuant to the right to appeal it grants. We are left to construe the statute to determine whether Muriel K.'s power of attorney agents on appeal have standing to speak for her under § 879.27(1).

24

¶ 24. Our goal in construing any statute is to give effect to the legislative intent. *See Coutts v. Wisconsin Retirement Bd.,* 209 Wis. 2d 655, 666, 562 N.W.2d 917 (1997). In construing § 879.27, we consider the fundamentals of agency law as well as the purposes and history of health care and durable powers of attorney. These considerations lead us to determine that the Knights stand in Muriel K.'s shoes for purposes of § 879.27(1) and, therefore, may appeal for her.

¶ 25. The fundamentals of agency law include the concept that the agent is a substitute for the principal. *See* 3 Am. Jur. 2d *Agency* § 1 (1986). Stated another way, the agent "acts for," "in the place of," and "instead of" the principal. *Id.* "It is, accordingly, a consequence of the [agency] relationship that whatever an agent does in the lawful prosecution of the transaction entrusted to him is the act of the principal." *Id.* at § 2. Adversary counsel and the guardian ad litem in their joint brief cite to these fundamental principles of agency law. Whatever an agent lawfully does *is* the act of the principal.

¶ 26. Building upon these basic principles of agency law, Wisconsin has adopted both the durable power of attorney and the power of attorney for health care as tools in planning for incapacity. *See Production Credit Ass'n v. Kehl,* 148 Wis. 2d 225, 229, 434 N.W.2d 816 (Ct. App. 1988). We consider each in turn.

¶ 27. In creating § 243.07, the legislature adopted the Uniform Durable Power of Attorney Act (hereinafter, "Act"). *See* ch. 313, Laws of 1981. Durable powers of attorney are intended to give competent individuals the ability to delegate to an agent broad powers to manage

their affairs and assets in the event of incompetency. *See* Wis. Stat. § 243.10(1); *In re Estate of Hegel,* 668 N.E.2d 474, 476 (Ohio 1996).[6] Accordingly, the agent under a durable power of attorney has been characterized as the "alter ego" of the principal. *Hegel,* 668 N.E.2d at 476.

■

¶ 28. Because § 243.07 is modeled on a uniform act, we look to the intent of the drafters of the Act for guidance. We also look to case law from other jurisdictions that have adopted the Act. Section 243.07(6) states: "This section shall be applied and construed to effectuate its general purpose to make uniform the law with respect to the subject of this section among states enacting it."[7]

¶ 29. According to its drafters, the central purpose of the Act is "to assist persons interested in establishing non-court regimes for the management of

---

[6] Under traditional agency law, certain powers are generally considered too personal to delegate. These include actions such as voting or taking a marriage vow. *See* 77 Wis. Op. Att'y Gen. 156, 157 (1988); Carolyn L. Dessin, *Acting as Agent under a Financial Durable Power of Attorney: An Unscripted Role,* 75 Neb. L. Rev. 574, 582 n.38 (1996) (hereinafter "Dessin"). Nevertheless, as a general rule, "a person may properly appoint an agent to do the same acts and achieve the same legal consequences . . . as if he had acted personally." 77 Wis. Op. Att'y Gen. at 157 (citing 3 Am. Jur. 2d *Agency* § 20 (1986)).

[7] Most states have adopted a version of the Act, and all 50 states have at one time or another enacted statutes authorizing some form of durable power. *See* Unif. Durable Power of Attorney Act, 8A U.L.A. 309 (Master ed. 1993); Dessin at 580–81; *see also* http://www.nccusl.org (cataloguing Uniform Acts promulgated by the National Conference of Commissioners on Uniform State Laws and compiling an act-by-act listing of adopting states).

their affairs in the event of later incompetence or disability." Unif. Durable Power of Attorney Act, Prefatory Note, 8A U.L.A. 310 (Master ed. 1993). Durable powers of attorney for finances have become popular planning tools across jurisdictions. *See Bank IV v. Capitol Fed. Sav. & Loan Ass'n,* 828 P.2d 355, 358 (Kan. 1992); *Guardianship of Smith,* 684 N.E.2d 613, 616 (Mass. App. Ct. 1997). The dominant idea behind the Act's original draft was to promote durable powers of attorney as private alternatives to more expensive court-oriented procedures. Prefatory Note, 8A U.L.A. 310.

¶ 30. The Act recognizes, however, that agencies under durable powers may coexist with provisions for guardians or conservators. Unif. Durable Power of Attorney Act, § 3 cmt., 8A U.L.A. 322. To that end, the Act provides for the nomination of a guardian in the durable power document and discourages courts from appointing a guardian contrary to the individual's clearly expressed wishes. Section 243.07(3)(b); *Smith,* 684 N.E.2d at 618 (citing Unif. Durable Power of Attorney Act, § 3 cmt.). The Act's core purpose, however, is to provide an alternative to guardianship with powers given to the agent that are as broad if not broader than those traditionally undertaken by guardians. *See Hegel,* 668 N.E.2d at 476.

¶ 31. The respondents contend in their briefs that had Muriel K. wished to ensure that the Knights would oversee her personal well being and financial affairs, she should have availed herself of the guardian nomination procedure under § 243.07(3)(b). It may initially seem tempting to conclude that this procedure is the solution to the problem presented by this case. Ultimately, however, such a solution is deceptively simple

and provides no solution at all. Even if Muriel K. had nominated the Knights as guardians in the durable power of attorney document, we would be left with essentially the same question on this review.

¶ 32. At oral argument Muriel K.'s adversary counsel asserted that even if Muriel had nominated the Knights as guardians, they should have been removed for good cause pursuant to § 243.07(3)(b). The respondents all advance that even if Muriel K. had nominated the Knights as guardians, they would have lacked standing to appeal as power of attorney agents who were nominated as guardians, but then removed for good cause. Thus, the respondents' position on appeal would remain the same regardless of whether Muriel K. had nominated the Knights as guardians. In the end, that position is circuitous and returns us to the same inquiry: do the Knights have standing to appeal under § 879.27?

¶ 33. The durable power of attorney form statute adopted by our legislature, § 243.10, suggests that the legislature assumed that agents under durable powers may prosecute appeals for their principals. In § 243.10(1), the legislature saw fit to include power to litigate as a power that the principal may delegate to her agent in executing the standard durable power of attorney form:

> LEGAL ACTIONS: My agent may retain attorneys on my behalf; appear for me in all actions and proceedings to which I may be a party; commence actions and proceedings in my name; and sign in my name all documents or pleadings of every description.

The durable power of attorney document executed by Muriel K. contains a similar clause granting the power:

28

> To commence, prosecute, enforce, defend, answer, oppose or abandon any action, suit or other legal proceeding relating to any matter in which I am or may hereafter be interested or concerned; and also, in the discretion of [my agent], to compromise, settle, refer to arbitration, or submit to judgment any such action or proceeding.

¶ 34. It appears that other state appellate courts have yet to squarely address the precise question before us. However, our canvas of other jurisdictions indicates that at least two have assumed that under the Act, durable power of attorney agents have standing to appeal court orders appointing guardians. *See Smith,* 684 N.E.2d at 616; *In re Sylvester,* 598 A.2d 76, 78 (Pa. Super. Ct. 1991).

¶ 35. In *Sylvester,* 598 A.2d at 78, a principal granted a power of attorney to two agents. Shortly thereafter, the County of Delaware Services petitioned for the appointment of a temporary guardian. *Id.* The petition contained a medical report and a variety of allegations against the agents. *Id.* The agents were accused of mistreating the principal and engaging in other improper activity. *Id.* at 78–79.

¶ 36. After the Pennsylvania orphans' court appointed a temporary guardian, the County petitioned the court to adjudicate the principal incompetent and appoint a permanent guardian. *Sylvester,* 598 A.2d at 78–79. The court "summarily appointed" an independent permanent guardian, and dismissed the agents' exception to the appointment. *Id.* at 79. The agents appealed, no one disputed their standing to appeal, and the Superior Court reversed, determining that the orphans' court erred by ignoring the statutory requirement that nominated agents be appointed guardians unless there is good cause for disqualification. *Id.* at 77.

¶ 37. Similar facts set the backdrop in *Smith,* where a principal appointed two long-time friends and business associates as his agents under a durable power of attorney and nominated them as guardians. 684 N.E.2d at 614–15. The principal's wife and daughter subsequently filed a petition for guardianship, alleging improprieties on the part of one of the agents and describing a history of distrust between the principal's family and one of the business associates. *Id.* at 615. The agents objected and filed their own petition. *Id.*

¶ 38. After a hearing with limited participation by the agents, the probate court appointed the principal's daughter and a family friend as permanent guardians. *Smith,* 684 N.E.2d at 615. The agents appealed, and with no one disputing the agents' standing to appeal, the Massachusetts Appeals Court reversed, concluding that under its version of the Act, the probate court had failed to make appointments in accordance with the principal's nomination without finding good cause to disqualify them. *Id.* at 616.

¶ 39. Thus, both the Pennsylvania court in *Sylvester* and the Massachusetts court in *Smith* allowed agents under a durable power of attorney to appeal a guardianship order. We recognize that these cases do not squarely address the question of standing, or for that matter, discuss statutes that confer standing. Nonetheless, the cases illustrate that a determination that the Knights have standing to appeal would seem to yield consistency with other states' interpretations of the Act.

¶ 40. Subsequent to its adoption of the Act, our legislature also provided that the citizens of Wisconsin may execute a power of attorney for health care. *See* 1989 Wis. Act 200; Wis. Stat. ch. 155. The power of

attorney for health care, various forms of which have been widely adopted among the states, allows competent individuals to designate agents to make health care decisions for them should they become incompetent. *Lenz v. L.E. Phillips Career Dev. Ctr.*, 167 Wis. 2d 53, 69, 482 N.W.2d 60 (1992); *see also, e.g., Wendland v. Wendland*, 28 P.3d 151, 160–61 (Cal. 2001).

■

¶ 41. Although the health care power of attorney and the durable power of attorney pertain to different decision-making powers, they are both intended to ensure that the wishes of a principal made while competent are effectuated in the event of the individual's incapacity. Thus, for purposes of the question before us, both types of powers serve the same function. Indeed, it is the type of decision-making powers granted under a power of attorney for health care that most highlight the gravity of what is ultimately at stake for Muriel K. in this litigation. In addition, both are based upon the same fundamental principles of agency. For all of these reasons, we view the two powers as resting on equal footing for the purposes of our standing analysis.

¶ 42. In short, § 879.27(1) empowers the Knights to appeal because of the purpose of both powers and the basic agency principles from which they are derived. Just as the court of appeals' construction of § 879.27(1) cannot account for the role of adversary counsel, it also fails to account adequately for the existence and nature of powers of attorney. The Knights have standing not because they may appeal *on behalf of* Muriel K. under § 879.27(4), but because for purposes of § 879.27(1), the Knights, in effect, *are* Muriel K.

¶ 43. Though the respondents rely on *In re Guardianship of McLaughlin,* 101 Wis. 672, 78 N.W.

144 (1899), and *Sanborn v. Carpenter,* 140 Wis. 572, 123 N.W. 144 (1909), both cases are inapposite given our determination that the Knights have standing because they act in place of Muriel K. under § 879.27(1). In *McLaughlin,* the brother of a ward appealed the denial of his petition for the removal of the guardian. 101 Wis. at 673. The court affirmed the circuit court's dismissal of his appeal determining that he could not appeal "on behalf of" the ward's minor children under a precursor statute to § 879.27(4) because he was neither the guardian of the children nor their guardian ad litem. *Id.* at 673–74. Additionally, the court determined that he lacked standing to appeal on his own behalf. *Id.* at 673.

¶ 44. Similarly, in *Sanborn,* the sister of a proposed ward appealed a circuit court decision reversing the appointment of a guardian. 140 Wis. at 572. This court dismissed the case, concluding that her personal rights were not involved and that she was not a "person aggrieved." *Id.* at 572, 574. Here, because Muriel K. is the person aggrieved, and the Knights' standing derives from § 879.27(1) as they act in her place, both *McLaughlin* and *Sanborn* ultimately prove irrelevant to our analysis.

¶ 45. We recognize of course that it is not, in reality, Muriel K. who is personally appealing, but this simply reflects the nature of a power of attorney. The Knights, in effect, substitute for Muriel K. for purposes of § 879.27(1). "The law must often adjust the manner in which it affords rights to those whose status renders them unable to exercise choice freely and rationally." *Lenz,* 167 Wis. 2d at 74 (quoting *Thompson v. Oklahoma,* 487 U.S. 815, 825 n.23 (1988)).

## III

██

¶ 46. Our interpretation of § 879.27(1) is consistent with our precedent that addresses the importance of judicial review in guardianship and protective placement proceedings. We have recognized and carefully guarded the need for readily available judicial review in these proceedings which affect the rights of incapacitated individuals.

¶ 47. In *State ex rel. Watts v. Combined Cmty. Servs. Bd.,* 122 Wis. 2d 65, 362 N.W.2d 104 (1985), the court determined that the constitution requires that individuals who are protectively placed under Wis. Stat. ch. 55 receive periodic, automatic judicial review of their placement. Although ch. 55 provides that a guardian, ward, agency, or interested person may petition for termination of protective placement, the court in *Watts* concluded that these protections were inadequate to protect the interests of the ward. *Id.* at 77–78. Such protections, the court reasoned, are insufficient when those protected cannot realistically be expected to set proceedings in motion on their own. *See id.* at 78 (citing *Doe v. Gallinot,* 657 F.2d 1017, 1023 (9th Cir. 1981)).

¶ 48. Recently, this court underscored the importance of judicial review of proceedings affecting incapacitated individuals in *County of Dunn v. Goldie H.,* 2001 WI 102, 245 Wis. 2d 538, 629 N.W.2d 189. In *Goldie H.,* the court determined that the periodic judicial review required under *Watts* must include a hearing and fact findings demonstrating the need for continued placement. *Goldie H.,* 2001 WI 102, ¶ 6. Acknowledging that the safeguards provided by judicial review require substantial resources, the court reasoned as follows:

> Taking a few moments to protect the rights of our most vulnerable citizens is not an unacceptable cost to society. It is an expression of our humanity. It is a commitment that no person will be warehoused and forgotten by the legal system.

*Id.* at ¶ 35. Thus, judicial review of guardianship and protective placement proceedings is a carefully guarded protection despite the undeniable burden on court resources.

¶ 49. Although *Goldie H.* and *Watts* involved ongoing circuit court level review, their rationales are readily applicable to the question of appellate standing. The combined thrust of the cases is the notion that when individuals are no longer able personally to ensure that their rights and interests are protected, mechanisms such as judicial review are necessary to safeguard those rights and interests.

¶ 50. The respondents maintain, however, that Muriel K.'s rights and interests are sufficiently protected by the guardian ad litem, the guardian of the estate, and adversary counsel. We disagree.

¶ 51. As the facts of this case illustrate, standing to appeal in the guardian ad litem, the guardian of the estate, and adversary counsel will sometimes prove inadequate. The guardian ad litem, guardian of the estate, and adversary counsel will not, in all cases, choose to advocate for the ward's directives made while competent.

¶ 52. The guardian ad litem is charged with advocating for the ward's "best interests." Wisconsin Stat. § 880.331(3) specifically provides that "[t]he guardian

34

ad litem shall be an advocate for the best interests of the proposed ward or alleged incompetent . . . and shall consider, but shall not be bound by, the wishes of the proposed ward or alleged incompetent . . . ." Similarly, the guardian of the estate has a fiduciary-type duty to manage the ward's assets in a way consistent with the ward's best interests. *V.D.H. v. Circuit Court,* 154 Wis. 2d 576, 583, 453 N.W.2d 882 (1990); *see also* Wis. Stat. § 880.19(5)(b).

¶ 53. The best interests of a ward and the ward's wishes expressed while competent may overlap. *See Spahn v. Eisenberg,* 210 Wis. 2d 557, 565, 563 N.W.2d 485 (1997). Ultimately, however, "best interests" is a standard that is not necessarily coextensive with what an individual has chosen or would choose were she competent to do so. *See Lenz,* 167 Wis. 2d at 81. Here, neither the guardian ad litem nor the guardian of Muriel K.'s estate viewed Muriel K.'s desires as expressed in her health care and durable powers of attorney as indicative of her best interests.

¶ 54. Adversary counsel, unlike the guardian ad litem and the guardian of the estate, is not charged with representing the best interests of the ward. Rather, as the court of appeals correctly noted, adversary counsel is "duty bound to represent his or her client's wishes." Apparently, however, in this case, after seeing Muriel K. on only one occasion in mid-February 2000, adversary counsel concluded that Muriel K.'s wishes included a revocation of her health care and durable powers of attorney and the appointment of Underwood as guardian of her person.

¶ 55. In short, the respondents' analysis of standing pursuant to § 879.27 fails to protect adequately Muriel K.'s rights and wishes as indicated in her health

35

care and durable powers of attorney. The respondents' analysis undercuts the availability of judicial review of determinations that may adversely affect the rights and wishes of a ward. In some cases it may be difficult or impossible to know the wishes of a ward expressed while competent. Here, however, Muriel K. expressed her wishes by hiring an attorney, executing health care and durable power of attorney documents, and memorializing an explanation of advance directives on a videotape. In this case, the Knights are the only ones advocating a position consistent with Muriel K.'s directives made while competent.

## IV

¶ 56. In sum, we conclude that the Knights, as the agents Muriel K. named in her health care and durable power of attorney documents, have standing to appeal under § 879.27(1). Because they were Muriel K.'s agents under these two documents, they are her substitutes for purposes of § 879.27(1). Accordingly, we reverse the court of appeals decision and remand to the court of appeals with directions to reinstate the appeal.

*By the Court.*—The decision of the court of appeals is reversed and the cause remanded to the court of appeals.

¶ 57. DIANE S. SYKES, J. *(dissenting)*. The majority concludes that Muriel K. is a "person aggrieved" by the guardianship order, and that the Knights, as Muriel K.'s agents under her health care and durable powers of attorney, have standing to appeal on her behalf under Wis. Stat. § 879.27(1). While I certainly agree with the first proposition, I disagree with the second, at least under the circumstances of this case.

36

¶ 58. As the majority notes, the Knights do not argue that they were personally aggrieved by the guardianship order; they wish to appeal only on behalf of Muriel K., by virtue of their status as her health care and durable power of attorney agents. In other words, they appear in a representative capacity only, asserting no personal rights or interests of their own, only those of Muriel K. The question, therefore, is not so much whether the Knights have standing to appeal, but whether Muriel K. has standing to appeal and the Knights have authority to do so as her surrogates.

¶ 59. As the subject of the guardianship petition and order, Muriel K. unquestionably qualifies as a "person aggrieved" for purposes of standing to appeal under Wis. Stat. § 879.27(1). Where, as here, the "person aggrieved" is a minor or incompetent, Wis. Stat. § 879.27(4) specifies who may bring the appeal: "[i]n all cases the appeal on behalf of any minor or incompetent person may be taken and prosecuted by the guardian of the minor's or incompetent's estate or by a guardian ad litem."

¶ 60. Despite this rather straightforward and conclusive language ("in *all* cases"), the majority reads the statute as nonexclusive, leaving open the possibility that in *some* cases someone *other* than the guardian of the estate or the guardian ad litem may appeal on behalf of a minor or incompetent under Wis. Stat. § 879.27(1) and (4). This conclusion conflicts with *In re Guardianship of McLaughlin*, 101 Wis. 672, 78 N.W. 144 (1899), which the majority does not overrule but merely dismisses as irrelevant. Majority op. at ¶ 44. But *McLaughlin* is directly on point, and, while old, remains good law, as the court of appeals correctly noted. *See Knight v. Milwaukee County*, 2001 WI App 147, ¶ 21 n.5, 246 Wis. 2d 691, 633 N.W.2d 222.

¶ 61. In *McLaughlin*, an uncle, claiming to represent the interests of his brother's children as well as his own, petitioned for the removal of the children's mother as their guardian, alleging misconduct and waste. *McLaughlin*, 101 Wis. 2d at 672. When the petition was denied, the uncle appealed, and this court rejected the appeal, citing a predecessor statute to Wis. Stat. § 879.27. Noting that the uncle conceded he lacked standing to appeal in his individual capacity, this court addressed whether he could appeal in a representative capacity on behalf of the minors. The court concluded that the statute specifying who may appeal on behalf of a minor was exclusive:

> Sec.[tion] 4031, Stats. 1898, provides that 'the appeal of any minor may be taken in and prosecuted in the name of the general guardian of such minor or by a guardian ad litem appointed for that purpose.' *No reason appears to us why this court should enlarge or diminish this statute. It must be deemed exclusive.* While the duty is not upon this court to find reasons for plain legislation, we may remark that it is of primary importance that the proceedings of county courts, with the important property interests placed in their care, should not be interrupted by unwarranted appeals, nor the rights of minors therein jeopardized, and their estates burdened with expense, at the discretion of people having no authority to represent them, and who in many cases may be antagonistic to their interests. Compliance with the statute is easy, and no doubt can be entertained at any time county courts will certify to the qualifications of some proper person to care for the minors' interests, by conferring upon him an appointment as guardian ad litem when the occasion demands.

*McLaughlin*, 101 Wis. at 674 (emphasis added).

¶ 62. Here, the Knights seek to appeal on behalf of Muriel K., just as the uncle in *McLaughlin* sought to

appeal on behalf of his brother's children. The statutes at issue are almost identical. Yet here, the majority reaches the opposite conclusion, interpreting the statute as nonexclusive. *McLaughlin,* and the plain language of the statute, cannot be so easily disregarded.

¶ 63. Even assuming the majority has correctly interpreted the statute,[1] its conclusion that the Knights may appeal on behalf of Muriel K. remains flawed. The Knights' authority to act on Muriel K.'s behalf as her health care and durable power of attorney agents is statutorily subordinate to the authority of the court-appointed fiduciaries, and does not survive the appointment of a guardian unless the circuit court says so.

¶ 64. Here, the circuit court specifically ordered the health care and durable powers of attorney revoked, terminating any and all authority the Knights had to act as Muriel K.'s agents, including, necessarily, any authority to prosecute an appeal on her behalf. Accordingly, while Muriel K. has standing to appeal the guardianship order, and one of her court-appointed fiduciaries may do so on her behalf, the Knights may not, because their agency under the health care and durable powers of attorney no longer exists.

¶ 65. Health care and durable powers of attorney are governed by statute, and the legislature has set

---

[1] In *In re Guardianship of Tamara L.P. v. County of Dane,* 177 Wis. 2d 770, 503 N.W.2d 333 (Ct. App. 1993), the court of appeals heard and decided an appeal brought on behalf of an incompetent by an attorney who was not the guardian ad litem and was not identified as the guardian of the estate or other court-appointed fiduciary. The opinion is unclear by what authority or in what capacity the attorney was appealing on behalf of the incompetent; standing, or the attorney's authority to take and prosecute the appeal on the incompetent's behalf, was simply not addressed.

39

forth a clear hierarchy of authority as between health care and durable power of attorney agents nominated in a written advance directive and guardians appointed by the court. The authority of court-appointed fiduciaries supersedes that of agents nominated in written advance directives.

¶ 66. Chapter 155 provides that a health care power of attorney is automatically revoked by a finding of incompetency and appointment of a guardian, unless the court orders it continued:

> If a court under s. 880.33 determines that an individual who is a principal is incompetent or makes a finding of limited incompetency under s. 880.33(3) and appoints a guardian for the individual, *the power of attorney for health care executed under this chapter by the principal is revoked and the power of attorney for health care instrument is invalid, unless the court finds that the power of attorney for health care and power of attorney for health care instrument should remain in effect.* If the court makes this finding, the guardian for the individual may not make health care decisions for the ward that may be made by the health care agent, unless the guardian is the health care agent.

Wis. Stat. § 155.60(2) (emphasis added).

¶ 67. Similarly, the Uniform Durable Power of Attorney Act, Wis. Stat. § 243.07 ("the Act"), provides that a durable power of attorney agent is accountable to any court-appointed fiduciary, such as a guardian, and that the fiduciary may revoke the power of attorney on behalf of the principal:

> (3) RELATION OF AGENT TO COURT-APPOINTED FIDUCIARY. (a) If, following execution of a durable power of attorney, a court of the principal's domicile appoints a conservator, guardian of the estate, or other fiduciary charged with the management of all

of the principal's property or all of his or her property except specified exclusions, *the agent is accountable to the fiduciary as well as to the principal. Unless the court finds that the durable power of attorney should remain in effect, the fiduciary has the same power to revoke or amend the power of attorney that the principal would have had if the principal were not disabled or incapacitated.*

Wis. Stat. § 243.07(3) (emphasis added).

¶ 68. To avoid a conflict between an agent and a court-appointed guardian, the Act allows a principal to nominate a guardian in a durable power of attorney, and requires the appointment of the nominated guardian, with limited exceptions:

A principal may nominate, by a durable power of attorney, the conservator, guardian of his or her estate, or guardian of his or her person for consideration by the court if protective proceedings for the principal's person or estate are thereafter commenced. *The court shall make its appointment in accordance with the principal's most recent nomination in a durable power of attorney except for good cause or disqualification.*

Wis. Stat. § 243.07(3)(b) (emphasis added).

¶ 69. The statutory scheme is therefore very clear: individuals may nominate agents to act on their behalf in the event they are disabled or incapacitated. Those agents are empowered to act for the principal pursuant to the advance directive if disability or incapacity occurs, in the absence of and without having to initiate formal guardianship proceedings. But if a formal guardianship proceeding is commenced and a guardian appointed, any agency established by an advance directive is automatically revoked or revocable by the guardian, unless the court orders otherwise. The court-appointed guardian thereafter speaks and acts for

41

the principal, *not* the former health care or durable power of attorney agent. If the durable power of attorney nominates a guardian in addition to an agent (and this may be the same person), the court must appoint the nominated guardian unless there is good cause not to, or the nominated guardian is disqualified.

¶ 70. The majority opinion upsets this statutory hierarchy, and confers standing to appeal on agents whose power to act for the principal has been nullified. There is no authority for this conclusion, and the majority essentially admits as much, relying instead on the notion that the legislature must have *assumed* that agents would have the authority to appeal because the Act allows delegation of the power to litigate. Majority op. at ¶ 33. But the power to litigate, if indeed conferred by a durable power of attorney, is only good as long as the document remains in effect. The majority does not explain how it independently survives the revocation of the power of attorney.

¶ 71. The majority also relies on two cases from other jurisdictions, but acknowledges that neither addressed the standing issue.[2] Majority op. at ¶ 39. Nevertheless, the majority pronounces its conclusion "consisten[t] with other states' interpretations of the Act." *Id.* It is hard to understand how one court's conclusion can be consistent with another's if the other did not even address the same issue.

¶ 72. Muriel K. did not nominate the Knights as her guardians, although she could have done so in her durable power of attorney and the circuit court would have been required to appoint them absent a showing of good cause or disqualification. Whether there would

---

[2] *Guardianship of Smith*, 684 N.E.2d 613 (Mass. App. Ct. 1997); *In re Sylvester*, 598 A.2d 76 (Pa. Super. Ct. 1991).

have been good cause to disregard their nomination (had they been nominated), or to disqualify them, is not before us.[3] As it stands, the Knights are *former* health care and durable power of attorney agents. Muriel K. now has court-appointed guardians of her estate and person, as well as adversary counsel and a guardian ad litem.

¶ 73. The law, therefore, no longer recognizes the Knights as agents for Muriel K., and they have no power or standing to speak or act for her in a representational capacity at all. They could not, under these circumstances, purport to make financial or medical decisions for her under either the health care or durable power of attorney documents, because those documents have been revoked. How is it that they retain the authority to make *legal* decisions for her, such as whether to appeal? They do *not* have that authority, only the court-appointed guardians do, and the majority's conclusion to the contrary is simply wrong. For these reasons, I respectfully dissent.

---

[3] Muriel K. is a 78–year-old unmarried woman with no children and substantial assets. Jeffrey Knight is her 38–year-old groundskeeper; Norris Knight is Jeffrey's father. During the time period in question, the Knights apparently saw Muriel nearly every day. This case was begun as an emergency protective placement due to Muriel K.'s extremely precarious physical and mental condition. The Milwaukee County Department on Aging received a complaint that the Knights were exploiting Muriel K. A caseworker responding to the complaint found her essentially nonresponsive, or at best extremely disoriented, and her diagnosis upon admission to the hospital was malnutrition and dehydration. She fell into this condition within two months of executing the powers of attorney in favor of the Knights and amending her will to designate them as beneficiaries.

¶ 74. I am authorized to state that Justices JON P. WILCOX and N. PATRICK CROOKS join this opinion.