In the Matter of the Guardianship of
Florence T. O.:

James J. Winiarski, Appellant,

v.

The Village at Manor Park,
Respondent.

Court of Appeals

*No. 2007AP331. Oral argument November 6, 2007.
—Decided December 4, 2007.*

2008 WI App 7

(Also reported in 744 N.W.2d 915.)

On behalf of the appellant, the cause was submitted on the briefs of and oral argument by *James J. Winiarski* of Milwaukee.

On behalf of the respondent, the cause was submitted on the brief of and oral argument by *Julie M. Rusczek* of *Drinker Biddle Gardner Carton* of Milwaukee.

On behalf of Florence T.O., the cause was submitted on the brief of and oral argument by *Mary Mountin,* adversary counsel, of Milwaukee.

Before Curley, P.J., Fine and Kessler, JJ.

¶ 1. KESSLER, J. James J. Winiarski appeals from an order finding Florence T. O. competent. Winiarski seeks to have a rehearing in which he is allowed to participate in the proceedings. Because we determine that Winiarski accepted the termination of his attorney-in-fact status after a court found Florence to

be competent, and further that Winiarski did so without reserving any right to appeal the trial court's finding that Florence is competent, we determine that Winiarski lacks standing to appeal, and therefore, dismiss this appeal.

## BACKGROUND

¶ 2. This case arises out of an unmarried woman's estate planning. In 1998 and again in 2000, Florence requested that Winiarski prepare estate planning documents for her. In July 2000, Florence executed a will, a healthcare power of attorney (HCPOA) and a general durable power of attorney (GDPOA). Winiarski was the "first named agent," with Florence's niece, Susan Milewski, listed as the alternative, on both powers of attorney.

¶ 3. In early May 2006, Florence was found wandering the streets of Milwaukee and was admitted to Columbia St. Mary's Hospital. Winiarski's office was notified and Winiarski began executing his duties under the HCPOA and GDPOA. On May 9, 2006, the Village at Manor Park (VMP) was notified by Columbia St. Mary's that they were discharging Florence to VMP on May 10, 2006. Columbia St. Mary's provided the powers of attorney and Winiarski's name to VMP. Linda Pischke, Director of Social Services at VMP, contacted Winiarski and sent him various documents which required his signature in order for Florence to be admitted to VMP. Winiarski objected to one of the admissions documents noting that it "arguably made him personally responsible for the debts and obligations of Florence." Another of the admission documents included the following language, to which Winiarski objected:

> If [VMP] determines in its sole discretion that any Power of Attorney documents executed by Resident

jeopardizes Resident's financial ability to promptly pay all charges due it, Resident and Responsible Party shall be promptly notified and will cancel or amend the Power of Attorney to the satisfaction of [VMP].

¶ 4. Winiarski executed most of the documents forwarded to him by VMP, some with modifications, but refused to agree to the above language, or to the assumption of personal liability for Florence's debts and obligations. At approximately this same time, VMP became aware that Winiarski had witnessed the HCPOA, even though he was named as the representative. VMP's CEO, Reginald M. Hislop, III, Ph.D., advised Winiarski that the HCPOA was therefore invalid under WIS. STAT. ch. 155. Winiarski acknowledged this, but requested that instead of invalidating the HCPOA, that VMP merely allow the contingent representative, Milewski, to assume the duties under the HCPOA. On June 23, 2006, VMP elected to file a petition for guardianship to determine whether Florence was competent to make her own healthcare decisions, commencing this case. Winiarski filed an objection to the petition on July 11, 2006.

¶ 5. The court appointed a guardian *ad litem* and an adversary counsel for Florence. At a status conference on the petition, the court requested briefing from the parties as follows. From adversary counsel, the court ordered informal briefing on "reasons why each power of attorney is allegedly invalid and, in addition, why [] Winiarski is not qualified to serve as agent under each power of attorney." From VMP, the court ordered an informal brief on "why guardianship of both the person and the estate of the proposed Ward is needed in this case," given the HCPOA and GDPOA. The court then provided Winiarski with an opportunity to respond.

¶ 6. At a second status conference, the court ruled, on the briefs and without oral argument by the

parties, that due to conflict of interest concerns, Winiarski's involvement in the guardianship proceeding would be limited to that of an observer. The court did allow Winiarski to be present even at proceedings taking place in chambers, but did not allow him to examine any witnesses or submit any evidence for the court's consideration.

¶ 7. The court held a hearing on the guardianship petition on October 26, 2006. VMP called the only witness to testify at that hearing, Dr. Peter Hansen, a psychologist who had completed a psychological evaluation of Florence. At the conclusion of Dr. Hansen's testimony, VMP moved to dismiss its petition, concluding that, based on Dr. Hansen's testimony, it could not prove by clear and convincing evidence that Florence was incompetent. After requesting and receiving comment from adversary counsel and Florence's guardian *ad litem*, both of whom agreed with VMP's request for a dismissal, and from Winiarski, the court found that Florence was competent and dismissed VMP's petition.

¶ 8. Shortly after the conclusion of the October 26 hearing, Florence's adversary counsel contacted Winiarski and informed him that Florence had revoked the HCPOA and the GDPOA, and terminated him as her agent. Winiarski conceded at oral argument before this court that he agreed to his unconditional termination as attorney-in-fact under the GDPOA, and the record shows that he agreed to return all keys and documents to Florence's new agent on November 10, 2006. On February 1, 2007, Winiarski filed a notice of appeal in this case.

## DISCUSSION

¶ 9. Winiarski argues that Florence was aggrieved because her directives were ignored and she was im-

properly found to be competent. Winiarski further argues that as her agent at the time of the guardianship proceedings, he was improperly barred from the proceedings and further, he has standing to make this appeal on Florence's behalf because at the time of the petition proceedings he was her agent.

¶ 10. VMP argues that: (1) Winiarski has no standing to make this appeal as Florence was not aggrieved because the court found her to be competent, pursuant to WIS. STAT. § 879.27 (2005–06)[1] and *Knight v. Milwaukee County*, 2002 WI 27, 251 Wis. 2d 10, 640 N.W.2d 773; (2) even if Winiarski has standing, he was properly excluded from the earlier court proceedings because: (a) of his conflict of interest as demonstrated by his objection to the petition for guardianship; and (b) a court has discretion under *Coston v. Joseph P.*, 222 Wis. 2d 1, 586 N.W.2d 52 (Ct. App. 1998), to limit participation of interested persons in guardianship proceedings; (3) the psychologist's testimony presented at the hearing was not clear and convincing evidence that Florence was incompetent; and (4) the court never revoked the GDPOA, therefore, this issue is not appealable.

¶ 11. Underlying all of the arguments presented is whether Winiarski has standing to appeal the court's finding that Florence was competent. "The essence of the standing inquiry is whether the parties seeking to invoke the court's jurisdiction have alleged a personal stake in the outcome which is at once related to a distinct and palpable injury and a fairly traceable causal connection between the claimed injury and the

---

[1] All references to the Wisconsin Statutes are to the 2005–06 version unless otherwise noted.

challenged conduct." *State v. Milashoski*, 159 Wis. 2d 99, 107, 464 N.W.2d 21 (Ct. App. 1990) (citations omitted). Wisconsin courts construe the law of standing neither narrowly nor restrictively. *Id.*

¶ 12. Under Wis. Stat. § 879.27(1), the right to appeal is limited to "[a]ny person aggrieved by any appealable order or judgment of the court assigned to exercise probate jurisdiction." In *Knight*, the court noted that "for purposes of § 879.27(1)," this means that the agent is, "in effect," the aggrieved principal. *Knight*, 251 Wis. 2d 10, ¶ 42. It is undisputed that during the entire guardianship proceeding, Winiarski was Florence's agent under the GDPOA. As such, Winiarski would have standing to appeal the probate court's order if: (1) Florence was aggrieved, *see* § 879.27(1); and (2) Winiarski was, at the time the notice of appeal was filed, still her agent under the GDPOA. *Knight*, 251 Wis. 2d 10, ¶ 42.

¶ 13. However, because Winiarski's standing derives from his agency under the GDPOA, when Winiarski conceded at oral argument that he had accepted Florence's termination of his agency, he would only be entitled to appeal on her behalf if he reserved the right to do so at the time of his termination as agent. As he conceded at oral argument that he did not reserve the right to do so, we must determine whether Winiarski's failure to reserve a right to appeal upon his termination as Florence's agent under the GDPOA constituted a waiver that deprives him of standing to make this appeal.

¶ 14. Waiver is the "voluntary and intentional relinquishment of a known right." *Milas v. Labor Ass'n of Wis.*, 214 Wis. 2d 1, 9, 571 N.W.2d 656 (1997) (citation and one set of quotation marks omitted). While the

"intent to relinquish the right is an essential element of waiver . . . [i]t is not necessary . . . to prove that the party had an actual intent to waive [and] the intent to waive may be inferred as a matter of law from the conduct of the parties." *Id.* at 9–10 (citations and brackets in *Milas* omitted). Waiver is established by demonstrating that the party had actual or constructive knowledge that the right existed and of the facts on which the right depended. *State v. Mudgett*, 99 Wis. 2d 525, 531, 299 N.W.2d 621 (Ct. App. 1980) (citation omitted). " 'Constructive knowledge' [i]s defined as the 'knowledge which one who has the opportunity, by the exercise of ordinary care, to possess.' " *Id.* (quoting *Walberg v. State*, 73 Wis. 2d 448, 461, 243 N.W.2d 190 (1976) (citation omitted)).

¶ 15. In this case, Winiarski conceded at oral argument that upon notification by Florence's adversary counsel that Florence had revoked the GDPOA in which she had named Winiarski agent, Winiarski accepted the termination without reserving a right to appeal the court's determination that Florence was competent. Because Winiarski is a lawyer, and the drafter of the GDPOA, we can infer that he had constructive knowledge of his rights and responsibilities as an agent under the GDPOA. By his acknowledgement at oral argument that he did not reserve his right to appeal on Florence's behalf the court's finding that she was competent when he consented to his termination as her agent under the GDPOA, we may also infer that Winiarski voluntarily and intentionally waived that right. *See Milas*, 214 Wis. 2d at 9. Accordingly, we conclude that Winiarski lacks standing to make this appeal.

¶ 16. Finally, because our determination that Winiarski lacks standing to make this appeal is disposi-

tive, we decline to address the remaining issues addressed in the parties' briefs. *See Gross v. Hoffman*, 227 Wis. 296, 300, 277 N.W. 663 (1938) (we need only decide dispositive issue).

*By the Court.*—Appeal dismissed.