IN the MATTER OF the GUARDIANSHIP AND PROTECTIVE PLACEMENT OF GOLDIE H.:

COUNTY OF DUNN, Petitioner-Respondent,

v.

GOLDIE H., Respondent-Appellant-Petitioner.

Supreme Court

*No. 00–1137. Oral argument April 25, 2001.—Decided July 10, 2001.*

## 2001 WI 102

(Also reported in 629 N.W.2d 189.)

For the respondent-appellant-petitioner there were briefs by *John E. Joyce*, Menomonie, and oral argument by *John E. Joyce*.

For the petitioner-respondent there was a brief and oral argument by *Nicholas P. Lange*, assistant corporation counsel.

¶ 1. DAVID T. PROSSER, J. Goldie H. was protectively placed at the Dunn County Health Care Center in 1998. The circuit court conducted a summary hearing and made the requisite findings that she was incompetent and required residential care and custody as the result of the infirmities of aging. In making this initial placement, the authorities in Dunn County afforded Goldie H. all the procedural rights to which she was entitled by law.

¶ 2. A year later, the Dunn County Department of Human Services petitioned the court for Goldie H.'s continued placement. The court appointed a guardian ad litem, and, in time, after carefully reviewing all the incoming documentation, it signed an order continuing her placement. The court did not hold a hearing or make findings of fact.

¶ 3. The issues presented in this case are (1) whether Goldie H. had a right to a hearing before her protective placement was continued; and (2) whether the circuit court had a duty to make findings of fact to support its continuation order.

¶ 4. These issues transcend the fortunes of a single elderly woman in Dunn County. They implicate the rights of thousands of persons who have been protectively placed in Wisconsin institutions because of the infirmities of age, chronic mental illness, developmental disabilities, or similar incapacities. They address the legislature's concern that these citizens be given the maximum freedom with the minimum restriction that their troubled conditions allow.

¶ 5. In this case, the circuit court continued the protective placement of Goldie H. without holding a summary hearing and without making factual findings. The court made the correct determination, but it did not make it in the correct way. As a result, Goldie H. is aggrieved.

¶ 6. We hold that a person is entitled to a hearing on the record before his or her protective placement is continued, and that the circuit court must make factual findings to support the need for continuation, as required by Wis. Stat. § 55.06(1) (1999–2000).[1] Here the circuit court did not strictly comply with these requirements. Nonetheless, we cannot help but conclude that in this case, the circuit court's review of the reports submitted to it, supplemented by a motion hearing in which the relevant issues were discussed, was sufficient to ensure that Goldie H. was being properly cared for and that her protective placement was properly continued in a facility appropriate for her

[1] All subsequent references to the Wisconsin Statutes are to the 1999–2000 version unless otherwise indicated.

needs. Consequently, we affirm the decision of the court of appeals.

## I. FACTS AND PROCEDURAL HISTORY

¶ 7. The Dunn County Department of Human Services (Dunn County DHS or DHS) first petitioned the circuit court for guardianship and protective placement of Goldie H. on October 20, 1998. The DHS asserted that Goldie H. was incompetent and "substantially incapable of managing her property or caring for herself by reason of infirmities of aging." Two physicians examined Goldie H. on October 14 and 15, 1998, before the petition was filed, and they ultimately determined her to be incapacitated.

¶ 8. When Dunn County Circuit Judge Rod W. Smeltzer received the DHS petition, he appointed John E. Joyce as Goldie H.'s guardian ad litem. Joyce filed a written report with the circuit court stating that he informed Goldie H. of the upcoming hearing relating to guardianship and protective placement, and informed her of her rights to a jury trial, adversary counsel, independent medical and psychological exams, presentation and cross-examination of witnesses, and appeal. Joyce stated that Goldie H. did not contest the proceedings and did not wish to exercise any of these rights.

¶ 9. On December 3, 1998, Judge Smeltzer held a hearing at which Goldie H. was present and represented by Joyce. The circuit court found that Goldie H. was incompetent and had a primary need for a guardian and for residential care and custody because of the infirmities of aging. It found that she was totally incapable of providing for herself and posed a substantial risk of serious harm to herself or others, and that her condition was permanent or likely permanent. The court appointed "House Calls," a service agency in

Menomonie, as Goldie H.'s permanent guardian, and it ordered her protectively placed at the Dunn County Health Care Center.

¶ 10. Close to one year later, on October 20, 1999, the Dunn County DHS petitioned the circuit court for the required annual review of Goldie H.'s placement. At the same time, it filed an annual review report. The report asserted that Goldie H. "has a disability which is permanent or likely to be permanent" and is "so totally incapable of providing for her own care and custody as to create a substantial risk of serious harm to herself or others." It therefore recommended a continuation of her guardianship and protective placement.

¶ 11. On October 27, 1999, Judge Smeltzer again appointed Joyce to serve as Goldie H.'s guardian ad litem. He ordered Joyce to file the annual report of the guardian ad litem by November 19, 1999.

¶ 12. Joyce filed his report on November 12. He indicated on the report form that Goldie H. continued to meet the standards for protective placement, did not contest the finding of incompetency, and did not request a change in placement. He also indicated that he believed Goldie H. was in the least restrictive environment consistent with her needs. Joyce said that Goldie H. did not require counsel or a full due process hearing, but he indicated that she was able to attend a hearing.

¶ 13. To supplement this form, Joyce submitted a written report recommending a continuation of Goldie H.'s protective placement and explaining in detail her condition and the basis for his recommendation. Joyce wrote that he had met with Goldie H. and with her court-appointed guardian, and had reviewed the report of the Dunn County DHS and Goldie H.'s file at the Dunn County Health Care Center. He then explained

why he believed Goldie H. was incompetent and met the standards for protective placement.

¶ 14. Joyce asserted that "Goldie's memory is so obviously impaired as to make her disability readily apparent" and that her "disability is so obvious as to make adversary counsel and a due process hearing unnecessary. This case is not a close call, it is a case of obvious memory impairment and disability."

¶ 15. Joyce's report also stated that Goldie H.'s court-appointed guardian at House Calls agreed with his recommendation of continued protective placement.

¶ 16. The day he received Joyce's report, Judge Smeltzer reviewed all the reports about Goldie H. in chambers. He then issued an order for her continued placement for another year. His November 12 order stated that:

 a. No additional information is requested;

 b. The appointment of counsel has not been requested;

 c. A full due process hearing is not necessary.

The circuit court did not hold a hearing or make specific findings of fact to support the order continuing Goldie H.'s placement.

¶ 17. Joyce did not learn of the court's action until near the end of November. On December 13, 1999, he asked the court to hold a hearing. He asserted that this court's decision in *State ex rel. Watts v. Combined Community Services Board of Milwaukee County*, 122 Wis. 2d 65, 362 N.W.2d 104 (1985), requires courts to hold a hearing on the record to continue a protective placement. Dunn County responded through its Assistant Corporation Counsel Nicholas P. Lange, asserting

that the court was not required to hold a hearing and had properly continued the protective placement.

¶ 18. The circuit court ordered a hearing, which it held on February 24, 2000. At the close of the hearing, the court declared in an oral decision that it had reviewed and considered the annual reports of the Dunn County DHS and of the guardian ad litem, as well as Joyce's detailed written report, before issuing its November order. The court did not make specific findings of fact to support continuation, but on March 31, 2000, it issued a written order continuing its previous order.

¶ 19. Goldie H. appealed. She contended that the circuit court was required to hold a hearing and to make findings of fact. Nevertheless, she did not contest her continued placement.

¶ 20. The court of appeals affirmed the circuit court, determining that even if the circuit court were required to hold a hearing and make factual findings, Goldie H. did not contest the continuation of her protective placement and so she had not been aggrieved by the circuit court order. *County of Dunn v. Goldie H.*, No. 00–1137, unpublished slip op. (Wis. Ct. App. Sept. 19, 2000).

¶ 21. We granted Goldie H.'s petition for review.

## II. ANALYSIS

¶ 22. This case concerns the annual review of protective placements that previously have been ordered under Wis. Stat. Ch. 55. Protective placements may not be ordered under Chapter 55 "unless there is a determination of incompetency...and there is a finding of a need for protective placement in accordance with sub. (2)." Wis. Stat. § 55.06(1).

¶ 23. Wisconsin Stat. § 55.06(2) enumerates the four factors required for a finding that a person has a "need for protective placement." Such a person:

(a) Has a primary need for residential care and custody;

(b) Except in the case of a minor who is alleged to be developmentally disabled, has either been determined to be incompetent by a circuit court or has had submitted on the minor's behalf a petition for guardianship;

(c) As a result of developmental disabilities, infirmities of aging, chronic mental illness or other like incapacities, is so totally incapable of providing for his or her own care or custody as to create a substantial risk of serious harm to oneself or others. Serious harm may be occasioned by overt acts or acts of omission; and

(d) Has a disability which is permanent or likely to be permanent.

Wis. Stat. § 55.06(2).

¶ 24. In *Watts*, this court invalidated portions of the Chapter 55 protective placement law on equal protection grounds because it did not provide for "an automatic periodic reexamination of the need for continued protective placement," while persons civilly committed under Chapter 51 were guaranteed an extensive annual due process hearing. 122 Wis. 2d at 72.

¶ 25. The *Watts* court established rules for extending Chapter 55 protective placements. *Id.* at 84–85. It required an annual review by a judicial officer and the appointment of a guardian ad litem, who is to meet with the protectively placed person, review the protective service agency's report, and after consulta-

tion with the protectively placed individual, report to the court with recommendations regarding the need for protective placement. *Id.* In addition, the *Watts* decision declared: "Upon its review of the report of the guardian ad litem, the court should decide whether to order additional information, whether to appoint defense counsel, and *whether to hold a full due process hearing* under sec. 55.06(6), Stats., *or a summary hearing*." *Id.* at 85 (emphasis added).

¶ 26. The parties disagree as to the meaning of the *Watts* requirements. Goldie H. claims that a circuit court is required to review the guardian ad litem's report and to hold either a full due process hearing or a summary hearing to determine whether to continue the protective placement.

¶ 27. The county contends that the circuit court must review the guardian ad litem's report, and then make a determination whether to hold a full due process hearing, a summary hearing, or no hearing at all. "Having a hearing 'on the record' solely for the sake of having a hearing 'on the record' isn't responsive to anything, and adds time to the overall procedure without adding substance," the county declares.

¶ 28. We held in *Watts*, and now reaffirm, that a circuit court must hold some form of hearing on the record—either a full due process hearing or a summary hearing—to continue a protective placement. The circuit court must also make findings based on the factors enumerated in Wis. Stat. § 55.06(2) in support of the need for the continuation, as required by Wis. Stat. § 55.06(1).

¶ 29. The purpose of Wisconsin's protective service system, Chapter 55, is established in Wis. Stat. § 55.001:

The legislature recognizes that many citizens of the state, because of the infirmities of aging, chronic mental illness, mental retardation, other developmental disabilities or like incapacities incurred at any age, are in need of protective services. These services should, to the maximum degree of feasibility. . .allow the individual the same rights as other citizens, and. . .protect the individual from exploitation, abuse and degrading treatment. This chapter is designed to establish those services and assure their availability to all persons when in need of them, and to place the least possible restriction on personal liberty and exercise of constitutional rights consistent with due process and protection from abuse, exploitation and neglect.

Wis. Stat. § 55.001. The protective service system, the legislature said, "shall be designed to encourage independent living and to avoïd protective placement whenever possible." Wis. Stat. § 55.02.

¶ 30. Some type of hearing is necessary to ensure that these goals are attained. Protectively placed individuals are represented in their annual reviews by guardians ad litem. *Watts,* 122 Wis. 2d at 84. If hearings were never required on annual reports, a guardian ad litem could fulfill his or her responsibilities under *Watts* simply by completing and filing a one-page form entitled "Annual Report of Guardian Ad Litem (Protective Placement)." This document includes eight questions to be marked "yes" or "no." It asks for explanation only if, for example, the answers indicate that the protectively placed person or the guardian ad litem is unsatisfied with the current placement, contends that one or more of the factors enumerated in Wis. Stat. § 55.06(2) is not present, or requests a full due process hearing.

¶ 31. A guardian ad litem could complete this form by checking boxes indicating that he or she and the protectively placed individual are satisfied with the current placement and do not contest the findings necessary for continuation or request a full due process hearing. The circuit court could then review and sign the document in chambers, continuing a protective placement for a year, without having any contact with the protectively placed person or the guardian ad litem, and without any real review of the guardian ad litem's work, diligence, or judgment.

¶ 32. A hearing on the record, however brief, promotes accountability. It tends to assure the reliability of the protectively placed individual's court-appointed guardian and guardian ad litem. It provides a method for the circuit court to satisfy itself that the protectively placed person continues to need protective care and placement, continues to be incompetent and incapable of caring for himself or herself, and has a condition that is likely to be permanent. *See* Wis. Stat. § 55.06(2). It also allows the circuit court to make informed findings of fact in support of the need for continuation of placement when continuation is appropriate. *See* Wis. Stat. § 55.06(1).

¶ 33. A hearing also gives the circuit court the opportunity to ask questions of the guardian ad litem (and, in some cases, the protectively placed individual) to ensure that the court's appointees have performed their duties diligently and that the protectively placed individual is receiving proper care.

¶ 34. We are mindful of court costs and the payments to guardians ad litem. It is not our intention to increase the costs or workload of the circuit courts. We also do not intend that protectively placed individuals,

some of whom may be in no condition to travel, attend summary hearings for no purpose.

¶ 35. A *summary* hearing is not an extensive hearing. It is a brief hearing on the record. The person whose protective placement is in question need not be present. The hearing may be in court or may be held by other means, such as a telephone or video conference. A summary hearing is not an evidentiary hearing. It is an opportunity for the court to ascertain that the proper procedures have been followed to ensure a proper continuation of a protective placement, and to make factual findings required by Wis. Stat. § 55.06(1). Taking a few moments to protect the rights of our most vulnerable citizens is not an unacceptable cost to society. It is an expression of our humanity. It is a commitment that no person will be warehoused and forgotten by the legal system. We believe we can assure this objective by giving our holding prospective application because the statute already requires annual review. Our goal is to firm up the rights of protectively placed persons, not to disrupt judicial calendars.

¶ 36. In this case, although the circuit court did not hold a summary hearing before ordering the protective placement continued or make specific factual findings of the four factors in Wis. Stat. § 55.06(2), we conclude that its continuation of Goldie H.'s protective placement was undoubtedly correct and does not require a second hearing.

¶ 37. Judge Smeltzer was the same judge who originally ordered Goldie H. protectively placed after a hearing in 1998. John Joyce was the same guardian ad litem who had represented Goldie H. in 1998. When Joyce recommended continuation of the protective placement, he submitted not only the standard form

annual report but also a three-page written report regarding his investigation of Goldie H.'s protective placement.

¶ 38. In this report, Joyce stated that he had reviewed the annual report of the Dunn County DHS, reviewed Goldie H.'s file at the Dunn County Health Care Center with her social worker, visited Goldie H. at the Dunn County Health Care Center to ascertain her status, advised Goldie H. of all her rights, and discussed those rights with Goldie H.'s court-appointed guardian.

¶ 39. Joyce further stated that Goldie H. remains unable to care for herself, her condition has not improved since her initial placement, and her disability appears permanent or likely permanent. He noted specific incidents demonstrating Goldie H.'s condition and incapacity, including an incident reported by Goldie H.'s social worker. His report set forth the reasoning for his recommendation of continued placement and stated that Goldie H.'s court-appointed guardian shared in his recommendation.

¶ 40. The circuit court had knowledge of Goldie H. and her condition from her 1998 initial protective placement hearing. It had the benefit of detailed information demonstrating that Goldie H.'s guardian ad litem had acted to ensure that she was receiving proper care and that her protective placement should be continued.

¶ 41. The circuit court was fully apprised of the recommendation of the guardian ad litem and the steps he had taken to arrive at his recommendation. The court reasonably relied on Joyce's report and recommendation, just as a court could rely on a thorough, well-reasoned report and recommendation of a guardian ad litem in the context of a summary hearing.

¶ 42. Finally, the circuit court held a hearing on Joyce's motion at which the relevant issues were discussed.

¶ 43. We conclude that in this case the circuit court's review of the annual reports submitted by Joyce and the Dunn County DHS, supplemented by the motion hearing, was sufficient to ensure that Goldie H.'s protective placement was properly continued.

¶ 44. The circuit court did not make specific findings of fact supporting the continuation order, either in the order continuing Goldie H.'s protective placement or at the motion hearing on February 24, 2000. However, it is clear that in ordering the continuation of Goldie H.'s protective placement, the circuit court relied on information more than sufficient to make the findings based on the factors enumerated in Wis. Stat. § 55.06(2), as required by Wis. Stat. § 55.06(1). We therefore find that the court implicitly made those findings of fact. *See Schneller v. St. Mary's Hosp. Med. Ctr.*, 162 Wis. 2d 296, 311–12, 470 N.W.2d 873 (1991).

¶ 45. Under the specific facts of this case, nothing would be gained by remanding this case to the circuit court to hold a second hearing and enter factual findings based on the guardian ad litem's report. We therefore affirm the court of appeals decision affirming the circuit court's order continuing Goldie H.'s protective placement.

## III. CONCLUSION

¶ 46. We hold that in determining whether to continue a protective placement, a circuit court must hold either a full due process hearing or a summary hearing, as described in this opinion, and must make factual findings to support the need for continuation of

552

the protective placement, as required by Wis. Stat. § 55.06(1). In the interests of judicial administration, we hold that this reaffirmation of *Watts* should be applied prospectively, so as not to undermine confidence in current placements. The annual review required by statute will protect the interests of protectively placed persons.

*By the Court.*—The decision of the court of appeals is affirmed.

¶ 47. JON P. WILCOX, J. *(concurring)*. I write separately because, while I concur with the majority's disposition of this case, I disagree in part with its reasoning. I agree with the majority insofar as it concludes that in light of the guardian ad litem's (GAL) thorough report which served as the basis for the circuit court order continuing Goldie H.'s protective placement, there is no reason to remand this case to the circuit court for a hearing. However, I disagree with the majority that *State ex rel. Watts v. Combined Community Services Board*, 122 Wis. 2d 65, 362 N.W.2d 104 (1985), invariably requires circuit courts to hold a hearing during every annual review.

¶ 48. This court held in *Watts*, 122 Wis. 2d at 84, that "there must be an annual review of each protective placement by a judicial officer." We then established the two procedures that, at a minimum, circuit courts must undertake during each review.

¶ 49. First, the circuit court should appoint to each protectively-placed individual a GAL, whose duty it is to examine the placement. *Id.* at 84. Pursuant to this duty, the GAL must: (1) "meet with the placed individual"; (2) "review the annual report made by the protective services agency under sec. 55.06(10)(a)"; (3)

553

"explain to the placed individual and his or her guardian the right to have an attorney appointed, to an independent evaluation, and to request a full due process hearing on the need for continued protective placement or on the appropriateness of the present placement facility"; (4) if necessary, request an additional evaluation of the placed individual; and (5) using all of the information gathered while fulfilling the preceding duties,

> make a report to the court concerning whether the [placed] individual continues to meet the standards for protective placement, whether the current placement is the least restrictive environment consistent with the individual's needs, whether the individual or guardian requests a change in status or placement, whether counsel should be appointed, and whether a full due process hearing should be held.

*Id.* at 84–85.

¶ 50. Second, the circuit court must review the GAL's report. *Id.* at 85. Upon review of the report, the court must make at least three decisions: (1) "whether to order additional information"; (2) "whether to appoint defense counsel"; and (3) "whether to hold a full due process hearing under sec. 55.06(6), Stats., or a summary hearing." *Id.*

¶ 51. In the present case, the circuit court dutifully followed these procedures, thus ensuring that Goldie H. received not only the precise placement which she had requested,[1] but also the precise place-

---

[1] Because the circuit court order extending Goldie H.'s placement granted the precise placement that Goldie H. had requested, I strongly question whether Goldie H. even has standing to appeal the order. *See County of Dunn v. Goldie H.,*

ment necessary to meet her needs. Nonetheless, the majority of this court holds that the circuit court did not do enough. According to the majority, the circuit court also was required to hold a hearing on the record so Goldie H.'s GAL could recite to the circuit court the facts and recommendations in his annual report.

¶ 52. The majority's holding is based on an erroneous interpretation of a single phrase in *Watts*. The majority interprets the phrase "whether to hold a full due process hearing. . .or a summary hearing" in *Watts* to mean that the circuit court must hold one of the two types of hearings during every annual review. *Id.*

¶ 53. Contrary to the majority's interpretation, however, this phrase does not require the circuit court to hold a hearing in every case. Rather, it provides that the circuit court, in its sound discretion, may hold a full due process hearing, a summary hearing, or no hearing at all.

¶ 54. Unlike the majority's interpretation, this reading of *Watts* harmonizes the meaning of the word "whether" in each of the three clauses delineating the decisions that the circuit court must make while reviewing the GAL report—"whether to order additional information, whether to appoint defense counsel, and whether to hold a full due process hearing. . .or a summary hearing." *Id.* In the first and second clauses,

---

Case No. 00–1137, unpublished slip op. at 2–4 (Wis. Ct. App. Sept. 19, 2000) (holding that Goldie H. had no standing to appeal); *State ex rel. Opelt v. Crisp*, 81 Wis. 2d 106, 113, 260 N.W.2d 25 (1977) (explaining that in order to have standing to appeal, the party seeking to appeal must have been adversely affected by the judgment or order from which he or she seeks to appeal); *Auer Park Corp. v. Derynda*, 230 Wis. 2d 317, 322, 601 N.W.2d 841 (Ct. App. 1999) ("A party cannot complain about an act to which he or she deliberately consents").

there is no dispute that the word "whether" is being "[u]sed in indirect questions to introduce one alternative." *The American Heritage Dictionary of the English Language* 2033 (3d ed. 1992). That is, as used in those clauses, "whether" introduces a question that the circuit court must decide: Should it "order additional information" and/or "appoint defense counsel"? *Watts*, 122 Wis. 2d at 85. And while each clause indicates an option that the court may choose to pursue, it leaves open the possibility that the court may choose an alternative option—not to order additional information and/or not to appoint defense counsel. Thus, as used in the first two clauses, the word "whether" essentially means "whether or not."

¶ 55. Had the majority applied the same definition of the word "whether" to the last clause—"whether to hold a full due process hearing. . .or a summary hearing"—it would have correctly understood the *Watts* court's mandate: Upon review of the GAL report, the circuit court must decide *whether or not* to hold a full due process hearing or a summary hearing. *Watts*, 122 Wis. 2d at 85. That is, had the majority applied a consistent definition of the word "whether" in all three clauses, it would have acknowledged that *Watts* held that the circuit court has discretion to decide to have a full due process hearing or a summary hearing or, in the alternative, no hearing at all.

¶ 56. To reach its conclusion that the last clause requires a hearing in every case, the majority necessarily applies a different definition of the word "whether" in the last clause than it does in the other two clauses. Specifically, it reads "whether" in the last clause to be "[u]sed to introduce alternative possibilities." *The American Heritage Dictionary of the English Language* 2033 (3d ed. 1992). Thus, applying this second defini-

tion of the word "whether," the majority interprets the last clause to mean that the circuit court must choose one of two alternative possibilities: a full due process hearing or a summary hearing.

¶ 57. The majority fails to explain, however, why the word "whether" should be read differently in that last clause than it is in the other two clauses.[2] Indeed, the majority's interpretation conflicts with both the *Watts* holding and the majority's disposition of the present case.

¶ 58. This court indicated in *Watts* that a hearing is not necessary in every case. In the paragraph directly following the paragraph containing the clauses at issue, the *Watts* court explained that "the annual review of the necessity for a hearing and the hearing, *if necessary*, may be conducted by a court commissioner. . . ." *Watts*, 122 Wis. 2d at 85 (emphasis added). This indicates by negative implication that the *Watts* court recognized that in at least some annual reviews, a hearing will *not* be necessary.

¶ 59. Further, in the case presently at hand, despite its interpretation of *Watts*, the majority acknowledges that a hearing is not necessary in every case. Noting the overwhelming amount of evidence that the circuit court had before it when it signed Goldie H.'s continuation order, the majority holds that "[u]nder the specific facts of this case, nothing would be gained by remanding this case to the circuit court" for a

---

[2] I note that if these three clauses had been grouped in a single statutory provision, this court would entertain a presumption that the word "whether" should be interpreted the same in each clause. *See Harnischfeger Corp. v. LIRC*, 196 Wis. 2d 650, 663, 539 N.W.2d 98 (1995) ("attributing the same definition to a word both times it is used in the same statute follows. . .[a] basic principle of statutory construction").

hearing.[3] Majority op. at ¶ 45. Had the majority adhered to its interpretation of *Watts*, however, it could not have concluded that "nothing would be gained" by remanding Goldie H.'s case for a hearing. It therefore seems that even the majority recognizes that in some cases, a hearing merely would be a redundant procedural formality.

¶ 60. This does not mean that hearings never should be required. *See* majority op. at ¶ 30. To be sure, for exactly the reasons that the majority posits in

---

[3] The majority also bases it holding on the fact that the circuit court held a motion hearing on Goldie H.'s case. *See* majority op. at ¶¶ 6, 36, 42–45. According to the majority, this hearing "supplemented" the GAL report and examined the "relevant issues." *Id.* at ¶ 6. The majority mischaracterizes this hearing.

The hearing to which the majority refers was an eight-minute hearing on the issue presently before this court: whether *Watts* requires a hearing on the record during every annual review. At no time during this hearing did the court ask Goldie H.'s GAL any questions regarding the propriety of Goldie H.'s placement or about the facts or recommendations in the annual report. Similarly, at no time during this hearing did the GAL or opposing attorney offer any additional information or recommendations regarding Goldie H.'s placement. And at no time during this hearing did the circuit court make any findings of fact relating to Goldie H.'s continued placement.

In contrast to the majority, I fail to see that this hearing provided Goldie H. with any additional protection against wrongful placement. If a hearing such as this—which in no way addresses the propriety of the protectively-placed individual's continued placement—is all that is necessary to meet the hearing requirement that the majority grafts onto *Watts*, I cannot help but conclude that the majority's hearing requirement ultimately may benefit no one but the attorneys paid to be present at such hearings.

¶¶ 30–31 of its opinion, many—if not most—cases will require a hearing. But it does not follow from this fact that a hearing is necessary in every case.

¶ 61. In accordance with *Watts*, I would leave the decisions of whether to hold a hearing and, if a hearing is necessary, what type of hearing to hold, within the sound discretion of the circuit court. Where, as in the present case, the GAL provides the circuit court with a report supported by overwhelming evidence in favor of continued placement and there is *absolutely no* contested issue before the court, a hearing merely would involve the GAL reciting to the court the evidence in his or her annual report. I see no need to spend our limited court resources and taxpayer money for this type of superfluity. In such circumstances, the interests of judicial economy outweigh the need for what ultimately will be an empty formality. *Watts* does not compel circuit courts to hold hearings on the record merely to hold hearings on the record.

¶ 62. For the reasons set out above, while I agree with the majority that this case need not be remanded for a hearing on Goldie H.'s continued placement, I do not agree with the court's holding that—with the exception of the present case—a hearing is necessary in every annual review. Accordingly, while I concur with the majority's disposition of the present case, I disagree in part with its reasoning.