COURT OF APPEALS
DECISION
DATED AND FILED

November 28, 2023

Samuel A. Christensen
Clerk of Court of Appeals

**NOTICE**

This opinion is subject to further editing.  If published, the official version will appear in the bound volume of the Official Reports.

A party may file with the Supreme Court a petition to review an adverse decision by the Court of Appeals.  *See* WIS. STAT. § 808.10 and RULE 809.62.

Appeal No.      **2022AP2035**

**STATE OF WISCONSIN**

Cir. Ct. No.  2019GN50

**IN COURT OF APPEALS
DISTRICT III**

IN THE MATTER OF THE GUARDIANSHIP
AND PROTECTIVE PLACEMENT OF J. M.:

DOUGLAS COUNTY,

    PETITIONER-RESPONDENT,

 V.

J. M.,

    RESPONDENT-APPELLANT.

APPEAL from an order of the circuit court for Douglas County: KELLY J. THIMM, Judge. *Affirmed*.

¶1      HRUZ, J.[1] James[2] appeals an order continuing his protective placement pursuant to WIS. STAT. ch. 55. James argues that Douglas County presented insufficient evidence for the circuit court to issue the order. Specifically, James contends the County's evidence was insufficient as a matter of law because it was required to present testimony from a medical professional, and it failed to do so. James separately argues that the County violated his due process rights by failing to present testimony from a qualified medical professional. Alternatively, he argues that the evidence was insufficient because the County failed to present testimony from anyone with personal knowledge of James' needs or care.

¶2      We agree with the County that no statute or binding precedent requires a medical professional to testify in order for a circuit court to continue a protective placement when there is a prior guardianship order, admitted evidence in the record that the ward suffers from an incapacity, and the court previously found that the ward suffers from an incapacity. Thus, the lack of testimony by a medical professional did not violate James' due process rights. We further conclude that the record before the court in this proceeding was sufficient for the court to order that James' protective placement be continued. We therefore affirm.

---

[1] This appeal is decided by one judge pursuant to WIS. STAT. § 752.31(2)(d) (2021-22). All references to the Wisconsin Statutes are to the 2021-22 version unless otherwise noted.

[2] For ease of reading, we refer to the appellant in this confidential matter using a pseudonym, rather than his initials.

## BACKGROUND

¶3        In February 2020, the circuit court ordered that James be placed under guardianship and that he be protectively placed. The comprehensive evaluation submitted with the County's petitions noted that James had been diagnosed with dementia. The evaluation was written by Jennifer Paananen, a social worker at the County's Department of Health and Human Services, and it referred to Dr. Isaac Hunt as James' "attending physician." The evaluation noted that Paananen had accompanied James to his neuropsychological testing with Hunt, wherein Hunt reported James' diagnosis of dementia.[3]

¶4        Among other things, the comprehensive evaluation noted that James was referred to the County in October 2019 after a "noticeable decline in his cognition over the past few months." This decline included his mismanagement of financial, dietary and medical affairs (including his failing to take his medications, despite him often claiming that he did take them), "dramatic mood shifts, memory impairments, and concerns for his overall welfare and … isolation." It also noted a specific instance where Paananen was at James' home when James suddenly lost consciousness and collapsed, hitting his head as he fell, and needed to be taken to the hospital.

---

[3] The record is unclear as to whether Dr. Hunt's report was ever admitted into evidence and whether the circuit court had taken judicial notice of this report at prior proceedings. Notably, the record lacks the transcript for the hearing wherein we presume Hunt's report would have been first introduced into evidence, and the minutes of that hearing do not specify that the report was admitted into evidence. Regardless, as will be explained below, we do not directly rely on Hunt's report in support of our conclusion that the County provided sufficient evidence to establish that James was in need of continued protective placement. Instead, we rely on Paananen's comprehensive evaluation, the County's annual reports, the circuit court's prior findings, and the fact that, on appeal, James does not appear to contest that he has an incapacity, but only appears to argue that he is not so incapacitated that he needs protective placement.

¶5 In March 2021—following the County having submitted an annual report pursuant to WIS. STAT. § 55.18 and the circuit court having conducted a due process hearing—the circuit court ordered James' continued protective placement. The annual report noted James' numerous medical diagnoses (including his dementia); his verbal outbursts and other increased negative behaviors caused by his dementia (including a recent physical incident with another resident at his former care facility); his history of falls and unsteady gait; his need for support on handling medication, finances and bathing; and his voicing of "suicidal ideations." At the conclusion of the due process hearing, the court noted, among other things, James' history and meeting of the required elements for a continued protective placement, James' expulsions from and denied access to various care facilities, and James' urination in heating ducts.

¶6 In February 2022, the County filed another annual petition for continued protective placement for James, which is the petition at issue in this appeal. It was again accompanied by an annual report from the County, written by one of its social workers. That report detailed James' current condition and issues with his care and well-being. Among other things, its author noted that James required: being checked on every thirty minutes "due to his recent increase in aggression and physical altercations with another male resident"; staff assistance with his behavior and mood swings; "meal preparation as he is unable to safely use kitchen appliances"; medication management; and reminders for showering. The author did state that James is able to independently perform a number of life tasks.

¶7 In March 2022, the corporate guardian, Twin Ports Guardianship and Payee Services (Twin Ports), filed an annual report on James' condition that noted James had "exhibited challenging behavior." Twin Ports also reported that James

"had an increase in agitation, [an] inability to manage anger[,] … increased memory loss over the past year," and "frequently refuse[d] his medications." A guardian ad litem (GAL) was appointed for James, and the GAL submitted an annual report stating that James was contesting the continued protective placement, that James "believe[d] he [could] live independently," and that he "requested an attorney." The GAL's report further stated that James "continue[d] to need protective placement" and that his "violent behaviors" were escalating.

¶8    In May 2022, a full due process hearing was held at which James and Jan Cummings, an individual employed by Twin Ports, both testified. Cummings testified that Twin Ports has served as James' guardian since his initial protective placement in 2020. In her role as James' guardian, Cummings testified that she is responsible for finding and retaining placement for James and that she works with the facility where James lives to schedule and arrange medical appointments and treatment for him.

¶9    Cummings additionally testified that James had been diagnosed with dementia and that there had been no changes in that diagnosis in the past year. Cummings noted that James "had increased behavioral disturbances and impulsivity due to dementia," which resulted in "altercations with other residents at the facility [where he was being housed]" and, ultimately, "two or three 30-day notices to seek alternate placement." Specifically, Cummings noted that these prior eviction notices from the facilities were "due to physical aggression" and "destruction of property."

¶10    Cummings further testified that prior to James' protective placement, he "was not taking his medications correctly" nor was he "eating his meals." She explained that James could not cook independently, noting, in part, that he would

fail to refrigerate milk and would keep expired food in his refrigerator. Cummings expressed concern about James using a stove and stated he "would [probably not] remember to … turn the stove off." Regarding James' housing, Cummings testified that she did not believe James "would have the follow-through to look at alternative housing" and that he "doesn't have the ability, due to the dementia," to secure housing on his own. Cummings testified that she believed James requires "24-hour-a-day supervision."

¶11 Cummings also testified that she believed James would be at risk if not protectively placed because he has "poor decision-making capabilities," does not "have insight into his degree of dementia," and "doesn't understand … the altercations he has with different residents." Due to these issues, Cummings stated that James "needs supervision," especially regarding his "medication, assistance with medical appointments … [and] meal preparation." Cummings further testified that James "can dress independently," but he "needs some reminders to change clothes regularly" and "for showering."

¶12 James testified that he "does not feel he needs protective placement" and has "never had issues taking [his] current medications." Regarding preparing meals and shopping, James testified he had "done [that] for many years," and he would be able to do that on his own. When asked about Cummings' testimony that he was diagnosed with dementia, James answered, "False." James also testified that he hit another resident "twice" but stated that the other resident "swung first." James further noted that he contested "about 80% of what Cummings has to say," referred to her as "an outright liar," and suggested that both he and Cummings take polygraph tests.

¶13  The circuit court concluded that the County had met its burden of proof, by clear and convincing evidence, that James continued to meet the standards for protective placement.[4]  The court noted that it found Cummings' testimony credible.  In doing so, the court specifically noted the fact that James had repeatedly been evicted from care facilities, thereby requiring the corporate guardian to find new placements for him.  According to the court, the "problem is, as we know with dementia, dementia doesn't get better, it gets worse or stays the same."  The court further found that James was "certainly not so far gone with dementia that he's not able to do certain things," but the court noted that while in the community in the past James had "refused some interventions when he needed [them].  He wasn't eating his meals [and] he wasn't taking his medications."

¶14  In the written order continuing James' protective placement, the circuit court prefaced its findings by stating that they were made "[a]fter consideration of the reports and other documents on file."  James now appeals.

## DISCUSSION

¶15  James argues that the County presented insufficient evidence to establish his continued need for protective placement because the County did not provide any testimony from a medical professional to establish any of the elements

---

[4] Brief oral argument was presented before the circuit court by all parties, as well as by the guardian ad litem.  Of note, the GAL recommended continued placement, stating that he

> would have a pretty big concern that given [James'] history with behaviors and … striking another resident or getting into a physical altercation, I certainly would have some concerns if he were independent in the community that there would be a great danger of interpersonal issues and problems.  And I don't think that would be safe or appropriate for him.

in WIS. STAT. § 55.08(1) and that the County's failure to provide testimony from a medical professional violated his due process right. Additionally, James argues that the evidence was insufficient because the County failed to present any testimony from a witness who had personal knowledge of James' current condition.

¶16 Our review of a protective placement presents a mixed question of fact and law. A circuit court's findings of fact for a protective placement "shall not be set aside unless clearly erroneous." WIS. STAT. § 805.17(2). A finding of fact is clearly erroneous when it is "against the great weight and clear preponderance of the evidence." *Royster-Clark, Inc. v. Olsen's Mill, Inc.*, 2006 WI 46, ¶12, 290 Wis. 2d 264, 714 N.W.2d 530. Whether the evidence supports a protective placement is a question of law that we review de novo. *Coston v. Joseph P.*, 222 Wis. 2d 1, 23, 586 N.W.2d 52 (Ct. App. 1998). Whether an individual has been denied his or her right to due process is a question of constitutional fact that we review de novo. *See State v. Tulley*, 2001 WI App 236, ¶5, 248 Wis. 2d 505, 635 N.W.2d 807.

¶17 For protective placement to be ordered, there must be "a comprehensive evaluation of the individual sought to be protected, if such an evaluation has not already been made." WIS. STAT. § 55.11(1). An annual review is required when a person is protectively placed, and a hearing, including a full due process hearing, is required if requested. *State ex rel. Watts v. Combined Cmty. Servs. Bd. of Milwaukee Cnty.*, 122 Wis. 2d 65, 85, 362 N.W.2d 104 (1985); WIS. STAT. § 55.18. Holding such a hearing "allows the circuit court to make informed findings of fact in support of the need for continuation of placement." *County of Dunn v. Goldie H.*, 2001 WI 102, ¶32, 245 Wis. 2d 538, 629 N.W.2d 189. The County is also required to submit "a written evaluation" of

the individual that becomes "part of the permanent record of the individual" as a part of the annual review. Sec. 55.18(1).

¶18 In its annual review, the petitioner must show, by clear and convincing evidence, that the individual in protective placement continues to satisfy the following four elements in WIS. STAT. § 55.08(1):

> (a) The individual has a primary need for residential care and custody.
>
> (b) The individual is … an adult who has been determined to be incompetent by a circuit court.
>
> (c) As a result of developmental disability, degenerative brain disorder, serious and persistent mental illness, or other like incapacities, the individual is so totally incapable of providing for his or her own care or custody as to create a substantial risk of serious harm to himself or herself or others. Serious harm may be evidenced by overt acts or acts of omission.
>
> (d) The individual has a disability that is permanent or likely to be permanent.

*Id.*

¶19 After the annual review hearing, a circuit court has three choices: (1) "order the continuation of the protective placement in the facility in which the individual resides at the time of the hearing"; (2) "order transfer of the individual to a protective placement that is the least restrictive environment"; or (3) "terminate the protective placement." *See* WIS. STAT. § 55.18(3)(e). If the court orders the continuation of protective placement, it is required to "include in the order the information relied upon as a basis for the order" and must "make findings based on the standards under [WIS. STAT. §] 55.08(1) in support of the need for continuation of the protective placement." Sec. 55.18(3)(e)1.

## I. Sufficiency of the Evidence

¶20    James argues that the County presented insufficient evidence for three of the four elements in WIS. STAT. § 55.08(1).[5]  Before addressing James' arguments in this regard, we note his fundamental misapprehension regarding the evidence upon which a circuit court can rely when determining whether to order that a protective placement be continued.  Namely, we note that all reports and documents that have been admitted into evidence in the individual's prior protective placement proceedings may be relied upon, in addition to any witness testimony introduced during the individual's due process hearing.  *See* WIS. STAT. § 902.01 (allowing a court to take judicial notice of adjudicative facts); *see also* ***Price County v. C.W.***, No. 2023AP18-FT, unpublished slip op. ¶¶21, 24 (WI App Sept. 6, 2023).[6]  This reality is especially true for documentation submitted in conjunction with the petition under review—such as the required comprehensive evaluation from the initial placement and the required annual written review pursuant to WIS. STAT. §§ 55.11(1) and 55.18(1), respectively.  *See also* WIS. STAT. § 55.12(1).  Here, those documents were the comprehensive evaluation written by Paananen and the County's February 2022 annual report.

¶21    To the extent the record shows relatively recent opinions from qualified medical professionals—here, Dr. Hunt's 2019 dementia diagnosis that was witnessed by Paananen (as included in Paananen's report) and was found by the circuit court in its prior order for guardianship—and there is no evidence that

---

[5] James does not challenge the circuit court's finding of incompetency, and, therefore, we address only the other three elements.

[6] Unpublished opinions authored by a single judge and issued on or after July 1, 2009, may be cited for their persuasive value. *See* WIS. STAT. RULE 809.23(3)(b).

the opinions therein are stale or that the placed individual's underlying conditions or needs have materially changed, the court can rely upon those opinions, subject to any contrary evidence that is submitted. If the placed individual wishes to challenge the continuing vitality of such opinions, he or she can request an independent evaluation under WIS. STAT. § 55.18(3)(b)3., as well as call his or her own witnesses under WIS. STAT. § 55.10(4)(c).[7]

¶22    As to James' threshold argument that the County was required to present testimony from a medical professional to establish at least some of the elements in WIS. STAT. § 55.08(1) for an individual facing continued protective placement, he does not cite to any statute or case directly supporting that notion. The County argues that there is no authority requiring a medical professional to testify in support of an order continuing an individual's protective placement, and we agree.

¶23    James points to **Walworth County v. Therese B.**, 2003 WI App 223, 267 Wis. 2d 310, 671 N.W.2d 377, which held that "the government must present a witness who is qualified by experience, training and independent knowledge of the [individual]'s mental health to give a medical or psychological opinion on

---

[7] To be sure, over time, evidence is more likely to become stale—including medical diagnoses and, perhaps, even findings of permanency—and a placed individual's conditions or needs can change, thereby requiring a petitioner to provide updated and more robust information to the circuit court in order to prove that the individual still continues to meet the elements in WIS. STAT. § 55.08(1).

each" element.[8]  *Id.*, ¶13.  ***Therese B.***, however, concerned an initial protective placement that occurred alongside a guardianship.  WISCONSIN STAT. ch. 55 governs protective placements, while WIS. STAT. ch. 54 governs guardianships.  A medical opinion *is* required for the appointment of a guardian, but there is no such corresponding requirement for a continued protective placement order.  *See* WIS. STAT. § 54.10(2)(b)2; *see generally* ch. 55.  Indeed, nothing in the statutory requirements for an annual review under WIS. STAT. § 55.18(1)(a) or a hearing under § 55.18(3) even suggests that the reviewer or any testifying witnesses must have medical expertise.  The legislature could have easily imposed such a requirement, but it did not do so.  Thus, we are not persuaded that ***Therese B.*** requires a medical professional's testimony at a *continued* protective placement hearing to prove that an individual continues to meet the elements under WIS. STAT. § 55.08(1).

¶24    In sum, neither WIS. STAT. § 55.18 nor controlling case law requires testimony from a qualified medical professional at each annual due process hearing, nor do those authorities limit the circuit court to reviewing and relying upon only the testimony and other evidence from that hearing.  There is no precedent or statutory basis to exclude reports and other documentation that have been previously admitted into evidence from the circuit court's consideration of whether the individual continues to meet the elements for a protective placement.

---

[8] James, in fact, cites ***Wood County v. James D.***, No. 2013AP1378, unpublished slip op. ¶14 (WI App Nov. 7, 2013), a case quoting ***Walworth County v. Therese B.***, 2003 WI App 223, ¶13, 267 Wis. 2d 310, 671 N.W.2d 377, for this premise.  However, we do not find this unpublished case to be persuasive, we question whether it properly applied ***Therese B.***, and we determine that it is factually distinct from the case at hand.  Therefore, we review only ***Therese B.*** in our analysis.  *See* WIS. STAT. RULE 809.23(3)(b) (this court has no duty to distinguish or otherwise discuss unpublished cases).

As mentioned, this reality is especially true for the statutorily required documents, such as the written evaluation by the County under § 55.18(1) and the comprehensive evaluation under WIS. STAT. § 55.11(1). Further, we note that, on appeal, James does not contest that he is incompetent. He appears to only argue that his incompetence does not rise to the level of requiring protective placement.

¶25 In his reply brief, James discusses two cases in his attempt to further argue that a medical professional's testimony is required to provide sufficient evidence for a continued protective placement. Both cases are unpublished, and we note that this court has no duty to distinguish or otherwise discuss either case. *See* WIS. STAT. RULE 809.23(3)(b). Regardless, we note that *J.C. v. R.S.*, No. 2022AP1215, unpublished slip op. (WI App Feb. 16, 2023), concerned a problem with the underlying guardianship, which is not at issue here. As already mentioned, James also cites *Wood County v. James D.*, No. 2013AP1378, unpublished slip op. (WI App Nov. 7, 2013), which we do not find persuasive. In particular, the court there never explained why the requirements in *Therese B.*— which, again, concerned an initial protective placement that occurred alongside a WIS. STAT. ch. 54 guardianship proceeding—apply to a continued protective placement.

¶26 With the foregoing in mind, we note the County's argument that Cummings' testimony and James' testimony provided sufficient evidence for the circuit court to conclude that James met the elements for protective placement. While we agree that there was sufficient evidence in the record for the court to conclude that James met those elements, we do not agree that Cummings' testimony—even coupled with James' testimony—alone was sufficient.

¶27 The record, however, provides additional evidence of James' condition to supplement Cummings' and James' testimony, thereby allowing the circuit court to determine that James satisfied the four required elements in WIS. STAT. § 55.08(1). The various annual agency reports and the initial required comprehensive evaluation collectively contain doctors' medical opinions and support the court's findings that James satisfied the elements for continued protective placement under § 55.08(1). The court was allowed to rely on the record and the court's own previously found adjudicative facts to determine whether James' condition continued to meet those elements.

¶28 Despite our recognizing the foregoing, the circuit court failed to make a record of much of this reliance. We note that we can only infer from the court's findings that it relied on documents in the record—namely Paananen's comprehensive evaluation, the annual reports on James' condition, and the court's prior finding that James suffers from a degenerative brain disorder—to determine that James met the elements for continued protective placement, especially as to the permanency of his condition. This omission gives us pause. As already stated, a court is allowed to review the documents admitted into evidence and its previously established adjudicative facts to establish that an individual has met the elements of protective placement. The court should, however, explain on the record that it is basing its findings, at least in part, on previously admitted documents within the record or prior adjudicative facts, and also explain why and how it is doing so. While we note that the court's findings here were sufficient, we urge circuit courts in future cases to make a more complete record of their reliance on such documents and prior findings within the record when analyzing whether the petitioner has met its burden to show that an individual continues to meet the elements for protective placement.

14

¶29   We now turn specifically to James' arguments on appeal and the relevant record.  James first challenges the evidence showing that he has a primary need for residential care and custody under WIS. STAT. § 55.08(1)(a).   The statutory phrase "primary need for residential care and custody" applies to an individual who has a primary need:  "(1) to have his or her daily needs be provided for in a residential setting; and (2) to have someone else exercising control and supervision in that residential setting for the purpose of protecting the person from abuse, financial exploitation, neglect, and self-neglect."  *Jackson Cnty. Dep't of Health & Hum. Servs. v. Susan H.*, 2010 WI App 82, ¶¶11, 16, 326 Wis. 2d 246, 785 N.W. 2d 677 (citation omitted).

¶30   James contends that Cummings' testimony that he needs reminders "for various tasks" and her concern about James cooking for himself does not mean that he has such needs.  James further contends that even if he has dementia, that fact alone does not establish a primary need for residential care and custody, and the County did not provide testimony about "what form" of dementia he has or "how it impacted his ability to meet his daily needs."  Instead, James points to the fact that Cummings testified that she knew James was able to bathe and feed himself, dress himself and use the bathroom by himself.

¶31   James largely fails to engage with the rest of Cummings' testimony showing that he does have a primary need for residential care and custody.  That testimony, coupled with the reports admitted into evidence in prior hearings and prior judicial findings, support the circuit court's conclusion that James has a primary need for residential care and custody.  Cummings testified that James "has had increased behavioral disturbances and impulsivity," multiple "altercations with other residents," multiple eviction notices due to "physical aggression" and "destruction of property," and she had concerns of fire hazards due to him

probably forgetting to "turn the stove off." The County's annual reports stated that James had verbal outbursts, a history of falls and an unsteady gait, mood swings, suicidal ideations, and that he is unable to use kitchen appliances safely. The comprehensive evaluation prepared by Paananen provided evidence of James previously falling and hitting his head, mismanagement of financial, dietary and medical affairs; and concerns about his isolation. Thus, the record contained evidence of James' need for residential care and custody that went far beyond concerns about him cooking for himself and needing reminders for various tasks. There was no evidence suggesting any of James' needs had decreased.

¶32     Additionally, and as the County points out, James has "a history of physical altercations against vulnerable adults," shown in part when he admitted to hitting another resident. We agree. Both the record and Cummings' testimony show this to be true. The circuit court found Cummings' testimony credible, and its findings of fact as to this element were not clearly erroneous. The County's annual reports noted an increase in aggression and physical altercations with other adult residents. James himself admitted that, in response to another resident making an obscene gesture at him at his current residence, "I hit—I hit him twice. He went down." We also cannot ignore that James himself established that he has no insight into his impairments, insomuch as he testified at the due process hearing that it was "[f]alse" that he had been diagnosed with dementia, contrary to the court's findings in that regard. This evidence—along with Cummings' testimony and the rest of the documents previously admitted into evidence—was sufficient to show that James continues to have a primary need for residential care and custody.

¶33     James next argues that the County failed to establish that his incapacity would result in a substantial risk of harm. *See* WIS. § 55.08(1)(c). Citing ***K.N.K. v. Buhler***, 139 Wis. 2d 190, 202, 407 N.W.2d 281 (Ct. App. 1987),

16

James argues that the "harm envisioned may not be based on mere speculation but must be directly foreseeable from the overt acts or omissions of the individual." James alleges that the "only evidence suggestive of risk of harm is the fact that [James] allegedly got in a fight and that he was being evicted for it." Recognizing that James did concede at the hearing that he hit another resident, James argues that even if he did get into a fight, "acting in self-defense doesn't establish that [James'] actions created a substantial risk of harm to himself or others."

¶34 James is incorrect that the circuit court's finding of a substantial risk of harm is "based on mere speculation." Both the established record as well as Cummings' and James' testimony show various ways in which James presents a substantial risk of harm to himself and others due to his dementia diagnosis. Cummings expressly testified that due to James' dementia, he would be unable to secure housing on his own. She further testified that James was not eating his meals, could not cook independently, had poor decision-making capabilities, and had issues with physical aggression and getting into altercations with other residents. Paananen's comprehensive evaluation described an incident where James fell and hit his head, as well as his mismanagement of medical, dietary and financial affairs. The County's reports from 2021 and 2022 described James' risk of falls, his verbal outbursts, and other increasingly harmful behaviors caused by his dementia. Both of the County's reports also referenced incidents of James getting into physical altercations with other residents.

¶35 All of this evidence from Cummings' testimony, and the record more generally, is not mere speculation but instead provides a factual basis for a finding that James presents a substantial risk of harm to himself and others because he is incapable of providing for himself and is physically aggressive toward others. It is undisputed that James recently fought someone, as James

conceded during the hearing that he did hit another resident at least "twice." It is largely irrelevant that this conduct was purportedly in "self-defense" because it shows that James has had issues with physical aggression that create a substantial risk of harm, and the record supports the County's argument that James has had a history of this behavior. The circuit court found Cummings' testimony credible. Based on her testimony and the established case record, the court could reasonably find that these risks of harm are present because of James' dementia. Accordingly, the evidence was sufficient for the court to find that James satisfies the element in WIS. STAT. § 55.08(1)(c).

¶36    Relatedly, James argues that "the County presented zero evidence from a medical professional regarding the nature of [his] condition and whether it was permanent or likely to be permanent." Citing again to *Therese B.*, James argues that the decision to order protective placement is "essentially a medical question that turns on the meaning of facts interpreted by expert psychiatrists and psychologists." *See Therese B.*, 267 Wis. 2d 310, ¶16.

¶37    While James is correct that no medical professional testified at the latest due process hearing regarding the element of permanency, as previously mentioned, such medical testimony was not required. Instead, there is ample evidence in the record of the permanency of James' condition. The two annual County reports, the GAL's reports, and the comprehensive evaluation refer to doctors' medical opinions that James' condition is permanent. In addition, the circuit court's permanency finding in the guardianship order support the court's current finding that James' condition is permanent. Additionally, as mentioned previously, *Therese B.* concerned both a guardianship and an initial protective placement and is therefore materially distinguishable from this case. In fact, in context, the quote that James cites states in full, "*In a guardianship and protective*

*placement proceeding*, the finder of fact might make a decision that will result in a life sentence to a nursing home. That decision is essentially a medical question that turns on the meaning of facts interpreted by expert psychiatrists and psychologists." *See id*. (emphasis added). The court, in its findings here, was allowed to rely on adjudicated facts previously found by it and the reports previously admitted into evidence to determine whether James' condition was permanent or was likely to be permanent, and its permanency finding here was not clearly erroneous.

¶38    Finally, to the extent James advances an insufficiency of the evidence challenge solely based on Cummings' purported lack of personal knowledge regarding James' condition or experiences at the facility, we reject it. As explained above, the record as a whole before the circuit court shows that when the court ruled on the County's petition for continued protective placement, the evidence of record in the case was sufficient for the court to determine that James required continued protective placement. There is no basis for us to conclude that the court's credibility finding regarding Cummings' testimony was clearly erroneous—regardless of any perceived lack of personal knowledge—especially given the documentary materials in the record. *See **State v. Sloan***, 2007 WI App 146, ¶21, 303 Wis. 2d 438, 736 N.W.2d 189 ("The [circuit] court is the sole arbiter of credibility issues and will be sustained if facts in the record support the court's conclusions.").

## II. Due Process

¶39    James separately argues that the County's failure to present testimony from a medical professional at the hearing violated his due process rights. Specifically, and again citing ***Therese B.***, James contends that because no

medical professional testified, he "was denied his statutory right to cross-examine [a medical professional] on the nature of the alleged diagnosis," including whether that diagnosis meant that James "required residential care," "caused aggressive behaviors," "impacted his ability to perform necessary daily activities," and "whether it was permanent or likely to be permanent." James argues that Cummings was merely a corporate guardian acting as "a conduit for the medical opinion of others."

¶40     The County responds that because there is no explicit right to an examination by a physician or psychologist as part of the annual review under WIS. STAT. § 55.18, James was not denied due process. To the extent the County perceives a categorical rule in this regard, it is slightly incorrect. Namely, § 55.18(3)(b)3. requires that if an individual requests an independent review, it shall be granted. James, however, did not request an independent evaluation.

¶41     James was also entitled to present witnesses at the hearing pursuant to WIS. STAT. § 55.10(4)(c). James could have called Dr. Hunt, Paananen or one of the social workers who wrote the annual County reports, or other authors of the documents in the record. Instead, James chose to leave the evidence in those documents virtually unrefuted. James was not denied his statutory right to cross-examine any witnesses; further, he chose to not call those witnesses to question their opinions and findings—including their continued vitality.

¶42     As to any purported due process violation that occurred due to the circuit court hearing only Cummings' testimony, the County responds that James failed to object during the hearing based on either the foundation or hearsay

grounds now alleged.[9]  We agree that James failed to object to Cummings' testimony or her qualifications below and, therefore, has forfeited his argument about her acting as "a conduit for the medical opinion of others."  *See State v. Counihan*, 2020 WI 12, ¶25, 390 Wis. 2d 172, 938 N.W.2d 530 ("Forfeiture is the failure to make the timely assertion of a right.").  We are especially confident in this approach given that similar arguments were raised by James' counsel at the conclusion of the March 2021 due process hearing; yet, a year later, counsel failed to object prior to, or during, Cummings' testimony at issue here.  Furthermore, the circuit court deemed Cummings' testimony to be credible, and there is no evidence to dispute that finding, much less show that it was clearly erroneous.  *See Sloan*, 303 Wis. 2d 438, ¶21.

¶43     More importantly, and as explained above, there is no requirement in the WIS. STAT. ch. 55 statutory scheme that requires the petitioner to have a medical professional testify at a full due process hearing for a *continued* protective placement.  There is no case law mandating such a requirement.  As previously explained, James' only cited authority—*Therese B.*—concerned an *initial* protective placement (and guardianship), which does require the testimony of a medical expert.  Under the circumstances of this case—namely, a *continued* protective placement where James was already subject to a guardianship order and the circuit court could rely upon other evidence in the record and its prior findings—we conclude that James' due process rights were not violated.

---

[9]  It was only in James' closing argument that his trial counsel suggested, in passing, that there was a concern as to the foundation for Cummings' testimony or that her testimony was hearsay.  The circuit court had closed evidence at that point, and any objection raised in those regards was untimely.  Both below and on appeal, the real challenge derived from any foundation concerns is that of the sufficiency of the evidence before the court.

*By the Court.*—Order affirmed.

This opinion will not be published. *See* WIS. STAT. RULE 809.23(1)(b)4.